(102 P.3d 490)
No. 92,164

ALLEN J. NICKELSON, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.

Opinion filed December 17, 2004.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, for appellant.

*Ted E. Smith*, of Kansas Department of Revenue Legal Services Bureau, of Topeka, for appellee.

Before MCANANY, P.J., MALONE, J., and LARSON, S.J.

MALONE, J.: Allen J. Nickelson appeals the district court's judgment affirming the Kansas Department of Revenue's (KDR) suspension of his driver's license resulting from Nickelson's blood alcohol breath test failure. Nickelson claims that the arresting officer had no lawful grounds to approach Nickelson's vehicle which had pulled off the highway. Nickelson further claims that even if the initial encounter was justified for public safety, the arresting officer improperly expanded the scope and length of the detention. We affirm.

## Factual and procedural background

On November 10, 2002, at approximately 1 a.m., Kansas Highway Patrol (KHP) Trooper Andrew Schippers was on patrol on Highway 24 in Thomas County. Schippers was finishing a traffic stop of another vehicle when he saw Nickelson's vehicle approximately ¼ mile away. Schippers observed Nickelson's vehicle driving east on Highway 24 and observed the vehicle turn south into a "farm plug" or driveway. The vehicle then made a circle and stopped, facing north toward Highway 24. There were no farm buildings, outbuildings, businesses, or residences in the area where Nickelson parked his vehicle. After turning into the driveway from Highway 24, Nickelson turned off the vehicle's lights. The weather was cold but clear.

Schippers noticed no traffic violations, driving irregularities, or deviations. However, Schippers was concerned that Nickelson might be in distress because Nickelson had turned into the "middle of nowhere" and turned off his vehicle's lights. Schippers testified that it was KHP policy to check on the welfare of any stranded motorist and that his supervisors had given him instructions to stop and assist people on the highways. Schippers testified that if somebody has pulled off the side of the road, he always checks on them, as he did the night in question. Schippers claimed that the purpose of approaching Nickelson's vehicle was to check on his welfare, "but also in the back of my mind, too, I—I mean I—I felt that activity was suspicious."

Schippers stopped his patrol vehicle next to Nickelson's which blocked Nickelson's vehicle from the highway. Schippers turned on his spotlight and observed that Nickelson's vehicle was occupied by Nickelson and a passenger. Schippers approached the vehicle and asked Nickelson if he was okay. Nickelson responded affirmatively. Schippers testified that when Nickelson rolled down the window in order to respond, Schippers immediately smelled alcohol. Schippers testified "[the alcohol odor] was pretty strong . . . and when he rolled down the window, it just—it just all hit me." That prompted Schippers to ask Nickelson if he had been drinking. Nickelson responded that he had not been drinking; his speech was not slurred. Schippers did not know whether the alcohol odor was coming from Nickelson or the passenger, so Schippers asked Nickelson to step out of the vehicle. Schippers distinctly smelled alcohol on Nickelson, and Schippers informed Nickelson that he was going to conduct field sobriety tests.

Nickelson was ultimately arrested for driving under the influence of alcohol (DUI). Nickelson was transported to the Colby Law Enforcement Center and submitted to testing on the Intoxilyzer 5000. The test result was .147, exceeding the legal limit of .08. The test failure was certified to the KDR, and Nickelson received notice of his driver's license suspension. Nickelson requested a hearing, and the administrative hearing officer upheld the suspension. Nickelson timely filed a petition for review in the Thomas County District Court. After a trial, the district court denied Nickelson's pe-

tition for review and upheld the driver's license suspension. Nickelson timely appeals.

### Scope of review

The district court's review in driver's license suspension cases is governed by K.S.A. 8-259(a), which provides in pertinent part:

"The action for review shall be by trial *de novo* to the court. The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension, cancellation or revocation under the provisions of this act."

An appellate court applies the substantial competent evidence standard when reviewing a district court's ruling in a driver's license suspension case. *Zurawski v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 325, 328, 851 P.2d 1385, *rev. denied*, 253 Kan. 864 (1993). "Substantial evidence is that which possess both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]" *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

### Public safety stop

Nickelson initially claims that Schippers lacked any lawful grounds to approach Nickelson's vehicle. As a result, Nickelson claims that Schippers lacked reasonable grounds to believe that Nickelson had been operating a vehicle while impaired by alcohol and, therefore, Schippers' request that Nickelson submit to additional chemical testing was illegitimate. Whether Nickelson's argument has merit depends upon the nature of the initial encounter between Schippers and Nickelson.

There are four types of police-citizen encounters: investigatory stops, voluntary encounters, public safety stops, and arrests. The most common police-citizen encounter is probably the investigatory stop or *Terry* stop. A law enforcement officer, without making an arrest, may stop any person in a public place whom such officer reasonably suspects is committing, has committed, or is about to commit a crime. When a law enforcement officer has stopped a person for questioning based upon a suspicion of criminal activity,

the officer may frisk the person for firearms or other dangerous weapons if required for personal safety of the officer. *Terry v. Ohio*, 392 U.S. 1, 24, 30-31, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The United States Supreme Court's ruling in *Terry* is codified at K.S.A. 22-2402. Here, the State does not assert that Schippers had any reasonable suspicion of criminal activity in order to justify approaching Nickelson's vehicle.

Kansas courts also recognize the existence of lawful voluntary encounters between police and citizens. "An officer who does not have reasonable suspicion to justify a *Terry* stop may, however, approach an individual on the street for investigative purposes. [Citations omitted.] The officer can ask the individual's name and request identification but cannot force the individual to answer. The individual is free to leave." *State v. McKeown*, 249 Kan. 506, 509, 819 P.2d 644 (1991). Voluntary encounters are not considered seizures and are not covered by the Fourth Amendment to the United States Constitution. *State v. Crowder*, 20 Kan. App. 2d 117, 119, 887 P.2d 698 (1994). Since we do not believe a reasonable person in Nickelson's position would have felt free to leave after being approached by Schippers, the contact between Schippers and Nickelson cannot be justified as a voluntary encounter.

The State's primary argument, which was adopted by the district court, is that the initial encounter between Schippers and Nickelson was justified as a public safety stop or public welfare stop. The concept of a lawful safety stop was first recognized by the Kansas Supreme Court in *State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992). In *Vistuba*, a deputy stopped a vehicle due to concern that the driver might be falling asleep. The driver was ultimately arrested for DUI. The driver attacked the validity of the stop, and the district court dismissed the complaint. The Kansas Supreme Court reversed the dismissal of the charge and held: "A civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop *if the safety reasons are based upon specific and articulable facts*." (Emphasis added.) 251 Kan. 821, Syl ¶ 1. The court ruled that the deputy stated adequate grounds to believe that the driver was falling asleep and that this reason alone justified stopping the vehicle. 251 Kan. at 824.

Thus, Kansas courts recognize the validity of a public safety stop by a law enforcement officer if the safety reasons are based upon specific and articulable facts. Nevertheless, the potential for abuse in allowing such stops must be recognized by the courts. Unless a public safety stop is based upon specific and articulable facts, the concept could "emasculate the constitutional protection afforded a motorist's privacy under *Terry*." *State v. Ludes*, 27 Kan. App. 2d 1030, 1035, 11 P.3d 72 (2000); see *State v. Crawford*, 30 Kan. App. 2d 977, 984, 52 P.3d 353 (2002), *rev'd on other grounds* 275 Kan. 492, 67 P.3d 115 (2003).

Nickelson cites *State v. Morris*, 276 Kan. 11, 72 P.3d 570 (2003), in asserting that Schippers' actions were unlawful. In *Morris*, Douglas County Sheriff's officers were investigating a possible methamphetamine lab in Eudora. Officers were conducting surveillance of an apartment when a female left the apartment and drove to Lawrence. The officers followed the female and saw her stop and briefly speak with the defendant, who was driving a pickup truck. The officers attempted to follow the defendant but were unsuccessful due to traffic.

The officers later located the defendant in his pickup truck parked near the Douglas County State Lake. Officers pulled up behind the pickup, activated their red lights, and illuminated the back of the pickup with spotlights. While approaching the driver's door of the pickup to obtain identification, officers noticed a chemical odor emanating from the pickup which the officers associated with methamphetamine. The officers looked inside the vehicle and observed a Coleman camp stove and other items which could be used to manufacture methamphetamine. The officers searched the pickup and found what they described as " 'a fairly complete meth lab.' " 276 Kan. at 14.

The Kansas Supreme Court ultimately suppressed the evidence, finding there was a seizure when the officers pulled up behind the defendant and activated their emergency lights. The court concluded there was no reasonable suspicion of criminal activity at the moment of the seizure and, therefore, the officers should not have approached the defendant's parked vehicle. 276 Kan. at 24-25. *Morris* is not helpful to Nickelson's case. *Morris* addressed the

issue of whether the officers had reasonable suspicion of criminal activity at the time they stopped and seized the defendant's vehicle. In *Morris*, there was no evidence that the officers intended to stop the defendant's vehicle for public safety reasons, and the public safety issue was not even addressed by the Supreme Court in its ruling.

Here, Nickelson had pulled his vehicle off the highway at 1 a.m. on a cold night. There were no farm buildings, outbuildings, businesses, or residences in the area where Nickelson parked his vehicle. Schippers testified that he was concerned about Nickelson's welfare. More importantly, it was KHP policy for a trooper to always check on the welfare of any vehicle pulled off the highway. Schippers testified that if somebody has pulled off the side of the road, he always checks on them, and Schippers was simply following this procedure when he approached Nickelson's vehicle.

We conclude that Schippers expressed specific and articulable facts for approaching Nickelson's vehicle for public safety concerns. The initial contact between Schippers and Nickelson was justified in this case as a lawful public safety stop.

### Duration of the stop

Next, Nickelson argues that even if Schippers was justified in making the initial contact with Nickelson, Schippers improperly expanded the scope and length of the stop. Nickelson argues that once Schippers saw that Nickelson and the passenger were not in distress, the detention should have stopped.

Nickelson cites *State v. Schmitter*, 23 Kan. App. 2d 547, 933 P.2d 762 (1997), to support his argument that the length of his detention was unnecessarily extended. In *Schmitter*, officers observed a car turn without using a turn signal. After shining a spotlight into the vehicle, they noticed neither of the occupants had their seat belt fastened. Officers approached the passenger defendant and asked for identification. The defendant gave the officer his name but indicated he did not have any identification. Although the officer testified that he was not concerned for his safety, the officer ordered the defendant out of the car and patted him down.

The defendant consented to a search of his pockets, and the officer found cocaine in the pockets.

The Court of Appeals ultimately found that the evidence was illegally seized. The court found that an individual's failure to produce written identification is not justification for a law enforcement officer to conduct a *Terry* search. The court ruled that the scope and duration of a seizure must be strictly limited by the circumstances of the initial stop. In order to justify a further detention for questioning on matters not related to the original stop, the officers must have reasonable suspicion that the individual has committed, is committing, or is about to commit some other crime. 23 Kan. App. 2d at 550-52. The court concluded that patting the defendant down without concern for officer safety was beyond the scope of the original stop and, therefore, the ultimate seizure of evidence was unlawful. 23 Kan. App. 2d at 552.

*Schmitter* can be distinguished from Nickelson's case. Here, Schippers did not arbitrarily order Nickelson out of his vehicle. Schippers immediately detected the odor of alcohol when he encountered Nickelson's vehicle. Schippers asked Nickelson out of the vehicle and expanded the scope of the original stop because of Schippers' suspicion that Nickelson was driving under the influence of alcohol.

Nickelson cites *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 54 P.3d 532 (2002), to argue that the detection of alcohol on one's breath alone does not constitute reasonable suspicion of criminal activity on the part of the driver. In *Davenport*, the defendant went to the Hutchinson Law Enforcement Center to check on his daughter. While the defendant was talking to an officer, the officer detected alcohol on the defendant's breath. The officer mentioned the odor to the defendant and told the defendant not to drive; the defendant said he was walking and not driving. The officer watched the defendant leave, and in less than 5 minutes the officer saw the defendant get into a pickup truck and drive. The officer called his sergeant who was patrolling in the area and informed him of his observations. Based on this dispatch, the sergeant stopped the defendant's vehicle. The sergeant had not noticed the defendant driving in an unusual manner.

The Court of Appeals ultimately held that the odor of alcohol on the defendant's breath alone did not provide reasonable suspicion *to support a stop*. The court upheld the suppression of the evidence. 30 Kan. App. 2d at 1101. *Davenport* can be distinguished from Nickelson's case because Nickelson was not initially *stopped* due to the odor of alcohol on his breath. Rather, Schippers stopped Nickelson's vehicle to check on his welfare. It was after Schippers legitimately stopped Nickelson's vehicle when he discovered the odor of alcohol permeating from the vehicle.

In *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 70 P.3d 707 (2003), officers stopped the defendant's vehicle for an inoperable headlight. When the officer approached the vehicle, the officer noticed a "strong odor of alcohol emanating from inside the vehicle, which also contained a passenger." 31 Kan. App. 2d at 645. The officer asked the defendant to step out of the vehicle and accompany the officer to the patrol car. While inside the patrol car, the officer detected the odor of alcohol. The defendant was ultimately charged with DUI.

The defendant contended that being asked to accompany the officer to the patrol car was beyond the permissible scope of a routine traffic stop. The Court of Appeals disagreed and found that the officer was not obligated to ignore the odor of alcohol even though this was not the reason for the initial stop. The court concluded that the officer's detection of the odor of alcohol constituted a sufficient reason to extend the scope and duration of the stop. 31 Kan. App. 2d at 649.

Here, Schippers immediately smelled a strong odor of alcohol upon approaching Nickelson's vehicle. There was no delay between the time that Schippers approached the vehicle and the time he detected the alcohol odor. Based upon *Stewart*, the odor of alcohol from the vehicle was sufficient to allow Schippers to detain Nickelson for further investigation.

We conclude that Schippers' initial contact with Nickelson was justified as a lawful public safety stop. When Schippers immediately smelled alcohol, the trooper had grounds to detain Nickelson for further investigation. The evidence was undisputed that Nickelson ultimately failed his blood alcohol test. The district court's

decision to uphold Nickelson's driver's license suspension was supported by substantial competent evidence.

Affirmed.