(251 P.3d 632)
No. 102,559

STATE OF KANSAS, *Appellee*, v. STEPHANIE ANNE KACSIR,
*Appellant*.

Opinion filed February 25, 2011.

Kenneth B. Miller, of Rork Law Office, of Topeka, for appellant.

Natalie Chalmers, assistant district attorney, Chadwick J. Taylor, district attorney, and Steve Six, attorney general, for appellee.

Before PIERRON, P.J., MARQUARDT and HILL, JJ.

HILL, J.:

## INTRODUCTION

Stephanie Anne Kacsir drove onto the shoulder of Interstate-70 in Topeka and stopped her car less than 100 hundred yards in front of a parked Kansas Highway Patrol car. Seeing this, the trooper pulled up and turned on his emergency lights. The trooper later testified he approached Kacsir to see if she was having mechanical problems with her car, if she needed directions, or if there was a medical emergency. Kansas courts recognize that police can make legal public safety stops of vehicles if the reasons for the stop are based on specific and articulable facts. We make two holdings on this issue. First, this is a car stop and not a voluntary encounter because once the trooper turned on the patrol car's lights no reasonable person would feel free to leave without the trooper's permission. Second, we hold this is a legal public safety stop because the trooper gave specific reasons for stopping and approaching the car.

In a separate issue, Kacsir complains the State arbitrarily and unreasonably denied her diversion because she failed to file her application for diversion within 30 days of her first court appearance. Each county and district attorney in Kansas has the discretion to offer diversion. By law, they must adopt written policies and guidelines for setting up any diversion program so defendants and their counsel may know how to go about seeking deferred prosecution of their cases. The district attorney's policy here, requiring submission of all such applications within 30 days of a defendant's

arraignment, is clear. If followed, the policy prevents the State from wasting time by preparing for unnecessary trials. Because this policy is facially reasonable, we hold the State did not arbitrarily or unreasonably deny Kacsir diversion.

For these reasons, we affirm Kacsir's conviction of driving under the influence of alcohol.

*Two cars pull over and one remains.*

Trooper Daniel McCollum was parked on the shoulder of I-70 when he saw two cars pull onto the shoulder less than 100 yards in front of him. It was after 10 p.m. and Tpr. McCollum presumed the drivers saw him and needed help or directions so he pulled his patrol car up behind the cars. At that point, the car parked in front returned to the highway while one remained. Tpr. McCollum turned on his rear red and blue lights in order to alert traffic that he was on the shoulder.

The trooper walked up to the remaining car and the driver identified herself as Kacsir. Tpr. McCollum testified he had seen no traffic infractions and that Kacsir was free to leave. Tpr. McCollum characterized the encounter as a public safety stop. He explained that when someone is on the shoulder, it is the practice of the highway patrol to stop and make sure that everything is all right and render assistance if needed. Tpr. McCollum also testified, however, that it is illegal for a driver to stop on the interstate if there is no emergency.

Tpr. McCollum asked Kacsir if everything was all right, and she replied that she was trying to get to Lawrence and was turned around. Tpr. McCollum testified that at that point, he wanted to make sure Kacsir's car did not have mechanical problems, determine if she needed directions, or see whether she was having a medical emergency. Nevertheless, he soon noticed the smell of alcoholic beverage and saw that Kacsir's eyes were bloodshot. Tpr. McCollum testified that at that point the stop became an investigatory stop because he suspected she might have been drinking and that Kacsir was no longer free to leave.

Ultimately, the State charged Kacsir with a first offense of driving under the influence of alcohol in violation of K.S.A. 8-1567(d).

Kacsir moved to suppress all evidence on the basis that the trooper illegally detained her, arguing her detention was neither a voluntary encounter nor or a public safety stop. The court denied Kacsir's suppression motion after hearing testimony from Tpr. McCollum and Kacsir. The district court held this was a stop, and not a voluntary encounter. The court noted Trooper McCollum pulled up to Kacsir's vehicle and Kacsir could plainly see Tpr. McCollum was a law enforcement officer. In addition, the court believed Kacsir's testimony that she saw the patrol car's flashing emergency lights. The court ruled the stop was a legitimate public safety stop based on the time, the situation, and the trooper's reason for the stop— to determine whether there was a problem and whether the driver needed assistance. Later at her bench trial, the court found Kacsir guilty of driving under the influence.

*We note the dates pertinent to the diversion issue.*

After the State charged Kacsir, she first appeared in Shawnee County District Court on February 13, 2008. The same day, she filed a jury trial demand and requested discovery. The State responded to her request for discovery on February 29, 2008, by stating the reports, tickets, an affidavit, and a certified driving record were available for reproduction at Kacsir's expense. Then, on April 3, 2008, Kacsir moved to compel additional discovery, noting she had requested a video recording of the incident but the State had informed her there was no video recording. After that, on May 6, 2008, Kacsir received a video recording of the incident. Then on June 10, 2008, Kacsir moved to suppress all evidence in the case.

After the court denied Kacsir's suppression motion, Kacsir applied for a diversion about 5 months after her first appearance, submitting her application on July 14, 2008. The State denied Kacsir's application because she did not file it within 30 days of her first court appearance. On July 28, 2008, Kacsir moved the court to compel the State to enter a diversion in the case, which the district court later denied.

*The district court correctly ruled this was a valid public safety stop.*

For her first argument, Kacsir contends that the trooper illegally seized her as he had no articulable suspicion of any crime or traffic infraction and there were no objective, specific, or articulable facts to support a finding that this was a legal public safety stop. The State counters that we should view this as a voluntary encounter between a member of the public and a law enforcement officer if we cannot decide this is a legal public safety stop. While we reject the State's contention that this is a voluntary encounter, the facts do persuade us that this was a legal public safety stop because the trooper indeed gave cogent and valid reasons for the stop.

First, we review some fundamental legal points. Without reweighing the evidence, this court reviews the district court's fact-findings to see if substantial competent evidence supports them. We then review any legal conclusion about the suppression of evidence by using a de novo standard. See *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). When the material facts pertaining to a suppression matter are not in dispute, the question of whether to suppress is a question of law over which this court has unlimited review. *State v. Fitzgerald*, 286 Kan. 1124, 1126, 192 P.3d 171 (2008).

Experience has generated a continuum of police-citizen contacts depending upon the circumstances of each contact and the varying degree of restraint of the public. Kansas courts recognize four types of police-citizen encounters: investigatory stops, voluntary encounters, public safety stops, and arrests. *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 362, 102 P.3d 490 (2004). This court considers an encounter between a citizen and a law enforcement officer in a public place as voluntary if a reasonable person would feel free to decline the officer's requests for information or otherwise terminate the encounter. See *State v. McGinnis*, 40 Kan. App. 2d 620, 624, 194 P.3d 46 (2008). But a seizure occurs when there is a "show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave . . . and the person submits to the show of authority." *State v. Morris*, 276 Kan. 11, 18-19, 72 P.3d 570 (2003).

A recent Kansas Supreme Court case, *State v. Greever*, 286 Kan. 124, 183 P.3d 788 (2008), is instructive. In that case, an officer began following a vehicle after the driver failed to properly signal. When the driver finally stopped the car and parked on the street, the officer pulled up behind the vehicle, got out of his patrol car, and approached the driver. When the driver noticed the officer and spoke to him, the officer smelled the odor of marijuana. On appeal from his drug conviction, our Supreme Court held the district court erred in finding this was a voluntary encounter and not a seizure, noting Greever submitted to the officer's show of authority (the activation of the emergency lights) by remaining at the scene, rolling down the window, and complying with the officer's request. The court cited its prior opinion, *Morris*, 276 Kan. at 20, where it held the activation of emergency lights is a sufficient show of authority to communicate that a person is not free to leave the scene. *Greever*, 286 Kan. at 135-36.

Thus, in our view, the facts here are similar. Kacsir saw the patrol car lights, did not drive away, and answered the trooper's questions. We hold this is a seizure and not a voluntary encounter.

We go on to the question of whether this was a legal public safety stop. The concept of a lawful safety stop was first recognized by the Kansas Supreme Court in *State v. Vistuba*, 251 Kan. 821, 824-25, 840 P.2d 511 (1992). Since *Vistuba*, courts recognize the validity of a public safety stop if the reasons for the stop are based upon specific and articulable facts. 251 Kan. 821, Syl. ¶ 1; *Nickelson*, 33 Kan. App. 2d at 364. In order to justify a public safety vehicle stop, there must be objective, specific, and articulable facts which would lead a law enforcement officer to reasonably suspect that a citizen is in need of help or is in peril. See *State v. Gonzales*, 36 Kan. App. 2d 446, 456, 141 P.3d 501 (2006).

We find the holding in *Nickelson* pertinent. In that case, an officer saw Nickelson's vehicle pull off the highway into an area with no buildings, businesses, or residences. The officer noticed no traffic violations but was concerned Nickelson might be in distress because he stopped in the ' "middle of nowhere" ' and turned the lights off. 33 Kan. App. 2d at 361. The officer testified it was policy to check on the welfare of stranded motorists, he always checks on

persons pulled off to the side of the road, and the purpose of approaching Nickelson's vehicle was to check on his welfare. Based on these facts, this court held the officer "expressed specific and articulable facts for approaching Nickelson's vehicle for public safety concerns" and justified the contact as a lawful public safety stop. 33 Kan. App. 2d at 365.

In the same manner, Tpr. McCollum saw Kacsir's vehicle pull onto the shoulder less than 100 yards in front of him. He testified he assumed the driver saw him and needed help or directions. Tpr. McCollum explained it is the practice of the highway patrol to stop and render assistance, if needed, when someone is parked on the shoulder and that officers stop and check on all vehicles parked on the shoulder. When Tpr. McCollum approached Kacsir, he asked if everything was all right. Tpr. McCollum testified that his motive for approaching Kacsir was to make sure she did not have mechanical problems, need directions, or have a medical emergency. Like *Nickelson*, Tpr. McCollum expressed specific and articulable facts for approaching Kacsir's vehicle for public safety concerns. We deem this contact a legal public safety stop.

Kacsir argues Tpr. McCollum failed to provide specific facts that would support a belief that Kacsir needed aid or was in peril and only presented an "un-particularized concern" or "hunch." But in doing so she ignores key aspects of the testimony. First, Tpr. McCollum made it clear that when he saw the cars pull over on the shoulder in front of him, he assumed the drivers saw him and needed help or directions. In addition, Tpr. McCollum testified it is illegal to stop on the interstate unless there is an emergency. Tpr. McCollum was not unreasonable in suspecting Kacsir may have stopped directly in front of him—despite the prohibition against doing so on a highway—because she needed some sort of assistance. Sufficient evidence supports the district court's findings, and we find no error in its legal conclusion.

*Kacsir failed to timely seek diversion.*

Kacsir next claims the State's denial of her diversion application was arbitrary and unreasonable. The State denied Kacsir diversion because her application was not submitted within 30 days of her

first court appearance. Kacsir reasons since the Kansas statutes do not impose a time limit, Kacsir would have waived her right to discovery had she complied with the time limit. Further, in her view, the time limit is designed to discourage defendants from making pretrial challenges to the State's evidence.

Before turning to the merits of Kacsir's claim, we note the State contends that we cannot review Kacsir's claim because Kacsir's appellate arguments were not presented to the district court. The State is incorrect. All three arguments made by Kacsir on appeal were raised before the district court at the hearing on Kacsir's motion to compel the diversion agreement. Kacsir's claim is properly before this court.

Two statutes control this matter. K.S.A. 22-2907 authorizes county and district attorneys to set up a system of deferred prosecution:

"(1) After a complaint has been filed charging a defendant with commission of a crime and prior to conviction thereof, and after the district attorney has considered the factors listed in K.S.A. 22-2908, if it appears to the district attorney that diversion of the defendant would be in the interests of justice and of benefit to the defendant and the community, the district attorney may propose a diversion agreement to the defendant. The terms of each diversion agreement shall be established by the district attorney in accordance with K.S.A. 22-2909.

"(2) Each district attorney shall adopt written policies and guidelines for the implementation of a diversion program in accordance with this act. Such policies and guidelines shall provide for a diversion conference and other procedures in those cases where the district attorney elects to offer diversion in lieu of further criminal proceedings on the complaint.

"(3) Each defendant shall be informed in writing of the diversion program and the policies and guidelines adopted by the district attorney. The district attorney may require any defendant requesting diversion to provide information regarding prior criminal charges, education, work experience and training, family, residence in the community, medical history, including any psychiatric or psychological treatment or counseling, and other information relating to the diversion program. In all cases, the defendant shall be present and shall have the right to be represented by counsel at the diversion conference with the district attorney."

Then K.S.A. 22-2908 provides directions on how to make such important decisions:

"(a) In determining whether diversion of a defendant is in the interests of justice and of benefit to the defendant and the community, the county or district attorney shall consider at least the following factors among all factors considered:

(1) The nature of the crime charged and the circumstances surrounding it;

(2) any special characteristics or circumstances of the defendant;

(3) whether the defendant is a first-time offender and if the defendant has previously participated in diversion, according to the certification of the Kansas bureau of investigation or the division of vehicles of the department of revenue;

(4) whether there is a probability that the defendant will cooperate with and benefit from diversion;

(5) whether the available diversion program is appropriate to the needs of the defendant;

(6) the impact of the diversion of the defendant upon the community;

(7) recommendations, if any, of the involved law enforcement agency;

(8) recommendations, if any, of the victim;

(9) provisions for restitution; and

(10) any mitigating circumstances."

The only published case on this point that we can find is *State v. Greenlee*, 228 Kan. 712, 721, 620 P.2d 1132 (1980). In *Greenlee*, the defendant submitted an application for diversion to the Sedgwick County District Attorney. He was denied diversion because it was the policy of the district attorney to exclude all drug offenders from the program. When Greenlee challenged the application procedure on appeal, the court stated:

"There is no statutory right of any defendant to be granted diversion and certainly there was no such right at common law. The statutes merely establish a procedure to be followed by the county or district attorney and certain factors which are to be considered if diversion is to be considered. The prosecutor, after following the procedures and considering all the factors 'may propose a diversion agreement to the defendant.' The prosecutor is not required to propose diversion to any defendant." 228 Kan. at 720.

The court ultimately concluded it could not say the district attorney abused his discretion in deciding not to offer diversion to drug offenders. 228 Kan. at 721.

Here, the Shawnee County District Attorney has a diversion policy that states its diversion criteria and one of those criteria is that an application must be filed within 30 days of the arraignment or it will not be considered. The State reasoned that if a defendant chooses to take a case to trial, the State must deal with pretrial motions, work the case, and get ready for trial. If the defendant makes a pretrial motion and witnesses are brought forward, the State's case may become stronger. At that point, the State has less

incentive to offer a diversion. The State characterized the 30-day time limitation as a "time and resource, management-type decision."

Kansas law provides that if it appears to the district attorney that diversion would be a benefit to the defendant and the community, a diversion agreement may be proposed. K.S.A. 22-2907(1). The purpose of the 30-day time limit is to avoid expending State resources in preparation for trial, only to later offer the defendant a diversion. Permitting this practice would waste resources to the detriment of the State and community as a whole. In *Greenlee*, the court stated: "Considering the seriousness of the drug problem in society today, particularly its devastating effect upon young people, we cannot say the district attorney abused his discretion in determining not to offer diversion to drug offenders." 228 Kan. at 721. Likewise, where the denial of diversion after the State has prepared its case discourages the waste of State resources, this court cannot say the Shawnee County District Attorney's Office abused its discretion in determining it will not offer diversion to those defendants who apply after the 30-day time limit.

On appeal, Kacsir argues that because K.S.A. 22-2907 and K.S.A. 22-2908 make no reference to a time limit, the time limit imposed by the Shawnee County District Attorney's office is unconnected to the purpose of the statutes. But Kacsir overlooks K.S.A. 22-2907(2), which provides: "Each district attorney shall adopt written policies and guidelines for the implementation of a diversion program in accordance with this act." The time limit imposed here is a written policy or guideline adopted by the Shawnee County District Attorney's office in implementing its diversion program.

Further, Kacsir also argues she would have waived her right to discovery had she complied with the 30-day time limit. This argument is incorrect in both fact and theory. Kacsir first appeared before the court on February 13, 2008, and requested discovery that same day. On February 29, 2008, the State made the reports, tickets, an affidavit, and a certified driving record available to Kacsir at her expense. Although Kacsir did not receive a video recording of the incident until May 6, 2008, she did not request clarification on that evidence until April 3, 2008—after the 30-day time

limit had expired. Because Kacsir had access to a substantial amount of evidence prior to the date on which the 30-day time limit expired, we cannot conclude Kacsir was deprived of discovery—even if she would have applied for a diversion within the 30-day time period.

Obviously, when a defendant *applies* for diversion, he or she does not waive any right. That waiver only comes later when the parties do enter a diversion agreement. Kacsir provides no authority for the proposition that a defendant waives the right to discovery when he or she simply applies for diversion.

Finally, Kacsir argues the 30-day time limit discourages persons from making pretrial challenges to the State's evidence and cites a California case, *Morse v. Municipal Court*, 13 Cal. 3d 149, 118 Cal. Rptr. 14, 529 P.2d 46 (1974), for support. *Morse* is unpersuasive because the California statutes dealing with diversion differ greatly from Kansas law. Unlike Kansas, in California "the court, not the district attorney 'shall determine . . . if the defendant should be diverted.' " *People v. Superior Ct. of San Mateo*, 11 Cal. 3d 59, 67, 113 Cal. Rptr. 21, 520 P.2d 405 (1974). Clearly, the decision to divert in Kansas resides with the county or district attorney. Specifically, K.S.A. 22-2907(2) gives district attorneys in Kansas the ability to develop and enforce specific rules such as the 30-day time limit.

Affirmed.