NOT DESIGNATED FOR PUBLICATION

No. 117,376

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF GODDARD,
*Appellee*,

v.

JON P. FREISTUHLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed April 13, 2018. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellee.

Before LEBEN, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM:  Jon P. Freistuhler appeals his convictions in Sedgwick County District Court for driving under the influence of alcohol (DUI) and speeding. Freistuhler contends that the district court erred in denying his motion to suppress because the investigatory detention exceeded the proper scope and duration of an investigatory detention for a speeding infraction. We find that the denial of the motion to suppress was proper and affirm the decision of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 2015, at approximately 2:47 a.m., Goddard Police Sergeant Lance Beagley was traveling east on U.S. Highway 54 within the city limits of Goddard. Officer Beagley observed a pickup truck approaching from the other direction, which appeared to be traveling faster than the posted speed limit. There was very little traffic at that time of night. Using his rear window radar antenna, Officer Beagley clocked the truck within the city limits of Goddard traveling at 66 mph within a 50 mph zone.

Officer Beagley turned around and sped up to catch the truck. As he did so, Officer Beagley heard verification from another officer further west that the truck was speeding. Officer Beagley caught up to the truck and conducted a traffic stop. Officer Beagley did not note any signs of driving impairment other than speeding.

Officer Beagley initially approached the passenger side of the vehicle. The driver was the sole occupant of the truck. Officer Beagley requested identification, which the driver provided without difficulty. The license identified the driver as Jon P. Freistuhler. When Officer Beagley requested proof of insurance, Freistuhler took some time to find it. While waiting for Freistuhler to provide his documentation, Officer Beagley observed a paper bracelet, which Officer Beagley later testified is commonly distributed in drinking establishments to indicate that the wearer is legally permitted to drink. Officer Beagley asked where Freistuhler had been and where he was going. Freistuhler told the officer that he had been at a friend's house and was going home. Officer Beagley then asked Freistuhler whether he had been through Goddard before and whether he knew the posted speed limit. Freistuhler indicated that he did not know how to answer the questions, which Officer Beagley found odd. At some point during this conversation, Officer Beagley noted that Freistuhler's eyes appeared "glossy" but not bloodshot.

After receiving Freistuhler's proof of insurance, Officer Beagley returned to his patrol car to issue a written warning. Goddard had recently implemented a computerized ticketing system which required Officer Beagley to enter Freistuhler's phone number and place of employment. Since he had failed to obtain this information, Officer Beagley returned to Freistuhler's vehicle, this time approaching the driver's side. In speaking with Freistuhler this time, Officer Beagley smelled alcohol and decided to conduct an investigation into a possible DUI after he completed the written warning for the traffic infraction. Officer Beagley returned to his car, completed the written warning, and then returned to Freistuhler's truck.

The officer asked Freistuhler to step out of the vehicle and walk to the back of the truck. When Officer Beagley asked if Freistuhler had any weapons, Freistuhler replied that he did not have any weapons on his person. When Officer Beagley asked about weapons in the truck, Freistuhler repled, "Anything and everything." Officer Beagley requested clarification, and Freistuhler indicated that he had "drills" in the truck. Officer Beagley testified that Freistuhler's words were "mixed and [Freistuhler] wasn't able to clarify what he was trying to say" when asked if he had any weapons in his vehicle. At one point Freistuhler told the officer that he had a "vehicle in his [gun]—a gun in his vehicle." Officer Beagley asked whether Freistuhler had been drinking, and Freistuhler admitted that he had been drinking.

Officer Beagley requested Freistuhler to perform some field sobriety tests. Freistuhler exhibited several clues on the walk-and-turn test but only one clue on the one-leg stand test. Officer Beagley arrested Freistuhler for DUI and transported him to the Sedgwick County jail.

At the jail, Officer Beagley advised Freistuhler of the implied consent advisory and requested an evidentiary breath test. Freistuhler complied with the request. The

3

Intoxilyzer 8000 breath test result indicated a breath-alcohol concentration (BAC) of .088.

The municipal court found Freistuhler guilty of misdemeanor DUI and speeding. Freistuhler appealed to the district court and filed a motion to suppress the breath test results arguing that Officer Beagley lacked reasonable suspicion to conduct an investigatory detention. The district court held a hearing on the motion on December 5, 2016. Officer Beagley provided the only testimony. Following the hearing, the district court denied Freistuhler's motion to suppress.

The case was presented to a six-person jury on December 6, 2016. The jury convicted Freistuhler of DUI for operating a vehicle with a BAC of .08 or greater but found him not guilty of DUI for operating a vehicle while intoxicated to a degree that rendered him incapable of safely operating a vehicle. The jury also convicted Freistuhler of speeding.

At sentencing on February 2, 2017, the district court imposed an underlying jail term of six months but suspended the jail term in favor of a year of probation and a $750 fine for DUI. The district court ordered Freistuhler to enter the Wichita Intervention Program to be completed within 90 days of sentencing in lieu of jail time. The district court imposed 25 hours of community service within the first four months of probation. The City of Goddard waived the fine for the speeding infraction.

Freistuhler filed a timely notice of appeal from the district court's imposition of sentencing.

Freistuhler's sole issue on appeal relates to the district court's ruling that Officer Beagley's traffic stop did not exceed the scope and duration of a lawful traffic citation in violation of the Fourth Amendment to the Constitution of the United States.

When Freistuhler moved to suppress the breath test evidence as fruit of an illegal search, the City of Goddard bore the burden to establish the lawfulness of the search. See *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014); *State v. Wissing*, 52 Kan. App. 2d 918, 920-21, 379 P.3d 413, *rev. denied* 305 Kan. 1258 (2016). Appellate review of the district court's suppression ruling grants deference to the district court's factual findings to the extent those findings are supported by substantial competent evidence but conducts plenary review over the ultimate suppression ruling. *State v. Nece*, 303 Kan. 888, 894, 367 P.3d 1260 (2016), *aff'd on reh's* 306 Kan. 679, 396 Kan. 709 (2017). Where, as here, the district court was presented with no conflicting versions of the stop and adopted the law enforcement officer's version of events, the material facts are undisputed and the suppression question becomes essentially a question of law, subject to unlimited appellate review. See *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches or seizures by the government. *Skinner v. Railway Labor Executives' Assn*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); *State v. Baker*, 306 Kan. 585, 589-90, 395 P.3d 422 (2017). Not all encounters between an individual and law enforcement implicate the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *Reiss*, 299 Kan. at 297-98. But, a traffic stop of a vehicle on a public roadway is not a voluntary encounter and constitutes a

seizure of the vehicle's occupants within the meaning of the Fourth Amendment. *State v. Gilbert*, 292 Kan. 428, 434, 254 P.3d 1271 (2011); *State v. Marx*, 289 Kan. 657, 661, 215 P.3d 601 (2009). Nevertheless, a traffic stop is objectively reasonable when the officer conducting the stop has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

In the present case, Officer Beagley possessed probable cause to stop Freistuhler for speeding. Freistuhler does not challenge the initial stop for speeding but contests the scope and duration of the traffic stop. A traffic stop is an investigatory detention and must be limited in duration and in the level of intrusiveness. *Rodriguez v. United States*, 575 U.S. __, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015); *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State v. Smith*, 286 Kan. 402, 410, 184 P.3d 890 (2008). A traffic stop must not exceed the scope or duration necessary to carry out the purpose of the initial stop. Kansas courts have interpreted this to include: requesting the driver to provide a driver's license, motor vehicle registration, and proof of liability insurance; running a background check on the driver's license; and issuing a citation or warning for the traffic infraction. *Smith*, 286 Kan. at 410; *State v. Thompson*, 284 Kan. 763, 774, 166 P.3d 1015 (2007). If no information raising a reasonable and articulable suspicion of further criminal activity is discovered during the time period necessary to complete these tasks associated with the traffic stop, the officer must allow the motorist to leave without additional delay. *Thompson*, 284 Kan. at 774 (citing *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 [1998]).

Reasonable suspicion represents a minimal level of objective justification based upon the totality of the circumstances from the perspective of a trained law enforcement officer. Reasonable suspicion does not demand proof equivalent to probable cause in quality or quantity but must be more than an unparticularized hunch. *State v. Moore*, 283 Kan. 344, 354, 154 P.3d 1 (2007). Reasonable suspicion is judged from the totality of the information known to the officer at the time the investigatory detention is initiated. See

*Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In the context of extending a traffic stop for an investigation of a new crime, this standard examines the information available to the law enforcement officer at the time the traffic stop concludes or should have concluded. See *Rodriguez*, 135 S. Ct. at 1614; *Thompson*, 284 Kan. at 774.

In the present case, Officer Beagley stopped Freistuhler for speeding, requested his driver's license and proof of insurance, and then returned to his patrol car to run warrants on Freistuhler. During this first encounter, Officer Beagley did not smell alcohol but observed a paper bracelet that he associated with establishments serving alcohol. Officer Beagley also noted that Freistuhler had "glossy" eyes and took an inordinate amount of time to find his proof of insurance. Officer Beagley asked Freistuhler several questions, some of which prompted odd responses from Freistuhler, but there is nothing in the record to indicate that Officer Beagley's questioning extended the duration of the traffic stop. The only evidence presented to the district court indicated that Freistuhler took a long time to find his proof of insurance and that Officer Beagley questioned him while he searched for the document. At this point, Officer Beagley had not extended the traffic stop beyond the time period necessary to conduct a legitimate investigation warranted by the traffic infraction.

While completing the electronic ticket for the warning citation, Officer Beagley realized that he had not asked Freistuhler for his phone number and place of employment, information purportedly required by police protocol to complete the citation. Officer Beagley returned to Freistuhler's vehicle to obtain this information. This, in and of itself, does not establish that the duration of the traffic stop was impermissibly extended beyond what was reasonably necessary to complete the traffic stop.

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently

7

pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, itself, render the search unreasonable.' The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it. [Citations omitted.]" *United States v. Sharpe*, 470 U.S. 675, 686-87, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

While the record on appeal does not clearly indicate how long this additional encounter added to the total duration of the traffic stop, nothing in the circumstances suggests that Officer Beagley's conduct was unreasonable. There is no evidence in the record that Officer Beagley intentionally failed to request Freistuhler's phone number as a ploy to conduct an investigation into Freistuhler's level of intoxication. Officer Beagley did not question Freistuhler during this encounter other than to obtain Freistuhler's phone number. Officer Beagley had no reason to believe that his second trip to Freistuhler's vehicle would reveal any information about Freistuhler's state of intoxication. Officer Beagley's return to Freistuhler's vehicle to obtain additional information to complete the citation did not unreasonably extend the duration of the traffic stop. Freistuhler provides no authority to the contrary.

During this second encounter, Officer Beagley smelled alcohol on Freistuhler's person. Officer Beagley believed at this point that he possessed sufficient information to detain Freistuhler for a DUI investigation, but he properly completed the traffic citation before extending the stop to investigate a possible DUI.

The investigatory stop authorized by the speeding infraction was not completed until Officer Beagley issued the warning citation and returned Freistuhler's identification and proof of insurance. At that point, Officer Beagley knew that Freistuhler smelled of alcohol, possessed "glossy" eyes, wore a paper bracelet associated with drinking establishments, took a long time to find his proof of insurance, and provided odd responses to some of Officer Beagley's questions. These circumstances are sufficient to support reasonable suspicion that Freistuhler might have been DUI and supports Officer Beagley's continued detention of Freistuhler to conduct a DUI investigation. See *State v. Pollman*, 286 Kan. 881, 894-95, 190 P.3d 234 (2008) (smell of alcohol, admission of alcohol consumption and belligerent behavior indicative of impaired judgment sufficient to establish reasonable suspicion); *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 367, 102 P.3d 490 (2004) (strong odor of alcohol is alone sufficient to extend traffic stop conducted for a different reason to investigate potential DUI); *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 649, 70 P.3d 707 (2003) (same).

The only issue on appeal concerns the actions of Officer Beagley and Freistuhler prior to the time Freistuhler exited the vehicle. Anything that occurred after that time is not relevant to the determination of whether the motion to suppress was properly denied and need not be considered by this court.

Affirmed.