No. 126,391

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JORDAN M. DAVIS,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

Law enforcement officers must have reasonable grounds to request a breath test. In later administrative driving license proceedings considering the reasonableness of making this request, or in subsequent judicial review of such requests, the State can prove reasonable grounds by using a completed DC-27 form, or through competent testimony, or both. Technical errors like checking or not checking a particular box on the form do not bar the form's use as evidence.

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Submitted without oral argument. Opinion filed April 5, 2024. Affirmed.

*Adam M. Hall*, of Thompson-Hall P.A., of Lawrence, for appellant.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before GREEN, P.J., HILL and CLINE, JJ.

HILL, J.: This is an appeal by Jordan M. Davis from a district court judgment approving the suspension of his driving license by the Kansas Department of Revenue. First, Davis argues that substantial competent evidence does not support the district

1

court's finding that law enforcement officers had lawful grounds to approach his truck that was pulled over on the shoulder of the highway. Second, Davis argues that substantial competent evidence does not support the district court's finding that the certifying officer had reasonable grounds to believe Davis operated his truck while under the influence of alcohol. Our review of the record leaves us unconvinced by Davis' arguments and we affirm the suspension of his driving license.

*Late at night, an officer investigates a truck with flashing lights parked at the edge of the road.*

In the early morning hours of mid-June 2021, Sergeant Joey Frost of the Douglas County Sheriff's Office saw a pickup truck with its hazard lights flashing on the shoulder of Kansas Highway 10. Frost turned both his front and back emergency lights on, pulled in behind the truck, and notified his dispatcher that he was starting a motorist assist stop. Frost approached the truck and saw that the driver appeared to be asleep or otherwise unconscious and disheveled—reclined in the driver's seat with his belt undone, pants unzipped, and wearing only one boot. Frost observed the driver breathing but could not determine whether he required assistance.

Frost then made several unsuccessful attempts to rouse the driver by knocking on the window and shining his flashlight through the windows of the truck. While doing so, Frost noticed a wallet on the ground, which he later discovered belonged to Jordan Davis, the driver. Frost returned to his car and checked the validity of the license plate and driving license found in the wallet—both returned as valid. After making one more attempt to wake Davis, Frost called for assistance and waited for deputies to arrive. Deputies Richard Whitis and Chris Chavez arrived about seven minutes later.

Frost and the deputies approached the truck together, with Deputy Chavez at the driver's side window. Chavez knocked on the window, but that still did not wake Davis.

Davis finally responded after the officers knocked several times on the window. The deputies identified themselves and requested Davis roll down his window. After fumbling with the buttons and accidentally rolling down the back windows repeatedly, Davis got his window down. With the window down, Chavez immediately smelled alcohol on Davis' breath and noticed Davis slurred his speech and had watery, bloodshot eyes.

Davis admitted to the deputies that he drank alcohol at a bar about an hour and a half before driving to the present location on K-10. Davis mistakenly told deputies that he thought it was 10 p.m., when it was closer to 1 a.m. Deputies had Davis perform standard field sobriety tests. They noted two clues of impairment on the walk-and-turn test and no clues of impairment on the one-leg stand test. Davis agreed to take a preliminary breath test which resulted in a blood alcohol content of 0.143. Chavez arrested Davis for driving under the influence.

Chavez completed the Officer's Certification and Notice of Suspension DC-27 form, marking the vehicle was already stopped and checking the box next to "saw person operate" a vehicle on the form.

*His license is administratively suspended, and that order is judicially reviewed.*

The Department of Revenue held a hearing to determine whether the decision to suspend and restrict Davis' driving privileges should be affirmed. In the administrative order, the hearing officer noted that the totality of circumstances justified extension of stop and request for breath test. In the hearing notes, the hearing officer noted the preliminary breath test failure, Davis' slurred speech, and failure of the sobriety tests.

Davis sought judicial review of the agency's decision. The district court took testimony from Sergeant Frost and Deputy Chavez and in a "Journal Entry and

3

Memorandum Decision Affirming the Agency Action" set out its findings of fact and conclusions of law.

The district court began its analysis by noting the governing statutory framework for review of the restriction and suspension of driving privileges. Under K.S.A. 8-1020(p), a district court reviews the agency action in a trial de novo. During such a trial, "the licensee shall have the burden to show that the decision of the agency should be set aside." K.S.A. 8-1020(q). But on the other hand, if the court finds the licensee does not carry that burden, and "the court finds that the grounds for action by the agency have been met, the court shall affirm." K.S.A. 8-1020(p).

The district court then found that the officers had objective, specific, and articulable facts that required them to contact Davis to determine whether he needed assistance. The court also found that the officers acted reasonably when they proceeded to try to rouse Davis and that when he did wake up, the immediate smell of alcohol on his breath transformed the stop into a lawful investigative detention. The district court also held that even if Chavez made a technical error on the certification on the DC-27 form, it "does not negate the existing reasonable grounds for requesting the breath test." The district court accordingly affirmed the agency's suspension of Davis' driving privileges.

In this appeal, Davis makes two claims:

- The district court erred when it "determined that an experienced officer would suspect that [Davis] needed help, and that it was appropriate for law enforcement to continue to seize [Davis] even after waking him."
- The district court erred "when it assumed the officer was incorrect," in their certification attesting that he saw Davis operate the truck, "but nonetheless determined that this was a technical error that cannot justify relief."

4

*The rules that guide us are clear and logical.*

When an individual appeals a district court's decision to affirm the suspension of their driving license, the reviewing court must determine whether the district court's factual findings derive support from substantial competent evidence. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008)*, overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015). Substantial competent evidence is "'that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved.' [Citation omitted.]" *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 (2019); see *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009) (substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion). Appellate courts must not reweigh evidence but must determine whether the record supports the district court's findings. See *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 171-72, 473 P.3d 869 (2020).

Next, appellate courts exercise unlimited review of the district court's conclusions of law. *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021). Without any objection to those factual findings or conclusions of law on the basis of inadequacy, the court presumes that the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017). If the reviewing court determines that the district court's decision lacks specific factual findings, then meaningful review is impossible, and remand may be necessary. See *State v. Thurber*, 308 Kan. 140, 232, 420 P.3d 389 (2018).

*Sergeant Frost had objective, specific, and articulable facts to suspect Davis needed help.*

Davis argues that after Frost examined his truck and saw him reclined in the driver's seat asleep, it was apparent that Davis was not in distress. As a result, Davis

argues there were no facts that could have led Frost to continue to believe Davis was in peril. Davis emphasizes that Frost did not try to wake Davis upon his initial interaction with his truck. In Davis' view, "Frost should have terminated the encounter and left the scene. Or, at least, he should have de-activated his forward-facing emergency lights to make possible a voluntary encounter (as opposed to a seizure)."

After reviewing the record, we agree with the district court's findings. In its analysis, the district court noted that Sergeant Frost testified that he first stopped to see if the driver of the truck needed help. Frost "saw a truck on the shoulder of the highway outside of town around 1 am with its hazard lights on. These facts would indicate to an experienced officer that the motorist might need assistance."

Similar to the facts here, in *Nickelson*, 33 Kan. App. 2d 359, 102 P.3d 490 (2004), an individual had pulled his truck off the highway at 1 a.m. on a cold night, where there were no farm buildings, outbuildings, businesses, or residences in the area. The Kansas Highway Patrol trooper testified that he was concerned for the driver's welfare, and he followed Patrol policy to always check the welfare of any car pulled off the highway. The court found that the trooper expressed specific and articulable facts for approaching Nickelson's truck for public safety concerns. 33 Kan. App. 2d at 365.

Here, like in *Nickelson*, the Douglas County Sheriff's Office policy requires deputies to stop and check to see if they can provide any assistance to the motorist. Therefore, when Frost saw the hazard lights flashing, he stopped to check that the occupants of the truck did not need assistance. Further, when Frost approached the truck, he observed the sole occupant reclined in the driver's seat, apparently asleep. The individual was nonresponsive and appeared disheveled—his pants were undone, his belt was off, he had one boot on, and one boot was in the back seat. And Frost found a wallet on the fog line of the highway—the license matching the driver of the truck.

6

Because the facts available to Frost justified a lawful public safety stop, substantial competent evidence supported the district court's findings.

*Frost acted to determine whether Davis needed assistance.*

Davis next argues that public safety reasons did not justify further action. Because Frost lacked reasonable suspicion for a crime, his further investigation was unlawful. To support this claim, Davis points to actions taken by Frost:

- Used his flashlight to inspect the interior of the truck cabin, searching for clues;
- Checked the validity of the truck's registration tag;
- Found a wallet on the ground outside the truck and checked the validity of the driving license inside the wallet;
- Knocked on the driver's window about four minutes after arriving at the scene; and
- Waited a few moments before calling for additional law enforcement officers but not an ambulance or any medical providers.

The facts here do not suggest a nap by the side of the road. The first was Davis' appearance: he was asleep or unconscious, his pants were undone, and he had one boot on with the other in the back seat. (We can think of no explanation for that!) His wallet was on the ground *outside* his door. And despite repeated knocking and shining a flashlight inside the truck, Davis did not awaken.

Substantial competent evidence supports the district court's findings.

*Once the windows came down and the officers smelled alcohol, the stop changed from a safety stop to an investigation.*

We agree with the district court when it concluded that "[t]he officers did not unlawfully extend the public safety stop beyond what was required to check [Davis'] welfare." The facts presented to the court establish a lawful public safety stop.

Once Davis rolled down his window, Deputy Chavez immediately smelled the faint odor of alcohol, observed Davis' speech was slurred, and noticed his eyes were watery and bloodshot. Chavez also observed that Davis did not immediately wake up to the repeated knocking and bright flashlights, and Davis was in the driver's seat of his truck while it was running. Additionally, Davis' wallet was found outside on the ground and Davis admitted to officers that he had been drinking at a bar and then drove to his current location on the shoulder of K-10.

Again, substantial competent evidence supports the district court's findings of fact and conclusion that officers did not unlawfully extend the stop, and once they had probable cause that Davis drove under the influence of drugs or alcohol, the encounter transformed into a lawful investigative detention.

*Should we reverse the license suspension because the officer checked the wrong box?*

Davis argues that Deputy Chavez' certification on the DC-27 form was materially false because on line 6: "Reasonable grounds/probable cause for my belief that the person was operating or attempting to operate a vehicle," Chavez checked the box next to "saw person operate." He contends that he was not operating the truck by being in the driver's seat with the engine on or by operating the windows when awakened because to "'operate'" means to drive.

8

No Kansas appellate court has held that failure to properly check the boxes on the DC-27 form, which certify that the notice requirements have been given, mandates suppression. *State v. Baker*, 269 Kan. 383, 386, 2 P.3d 786 (2000).

We adopt the reasoning from an unpublished opinion from the panel in *Lane v. Kansas Dept. of Revenue*, No. 117,366, 2018 WL 2170209, at *4 (Kan. App. 2018) (unpublished opinion). In that case, the officer checked only the box on the DC-27 form that stated that Lane operated a vehicle while drunk, so, on appeal, Lane argued KDOR was precluded from arguing he tried to operate the vehicle while drunk. The court held that "even if the form includes technical errors like not checking a particular box, the State can still prove reasonable grounds for requesting a breath test 'through the use of the completed DC-27 form, through competent testimony, or through a combination of the two.'" 2018 WL 2170209, at *4 (quoting *Baker*, 269 Kan. at 388).

Here, the district court already held the officer had reasonable grounds to believe that Davis had operated the vehicle while drunk, so the court noted that even if it did consider the argument, it does not prevail. The district court cited the *Lane* opinion in applying the reasoning to this case, finding "[t]he alleged error on the DC 27 by Deputy Chavez alone does not negate the existing reasonable grounds for requesting the breath test."

Thus, even if this court assumed Chavez erred in checking the box which indicated that he saw Davis operate the truck, such an error is not reversible because there were other reasonable grounds for requesting the preliminary breath test.

We are unpersuaded by Davis' arguments and affirm the driving license suspension.

Affirmed.

9