NOT DESIGNATED FOR PUBLICATION

No. 111,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN LEE BASE,
*Appellant*.


MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA and WILLIAM F. LYLE JR., judges. Opinion filed November 9, 2017. Affirmed in part, reversed in part, and vacated in part.

*Roger D. Struble*, of Blackwell & Struble, LLC, of Salina, for appellant.

*Jamie L. Karasek*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., LEBEN, J., and KEVIN P. MORIARTY, District Judge, assigned.

PER CURIAM: Brian Lee Base appeals his convictions of driving under the influence (DUI) and criminal refusal of a breath test. Base claims: (1) the district court erred in denying his motion to suppress the evidence; (2) there was insufficient evidence to support the DUI conviction; and (3) the district court erred in denying his motion to dismiss the charge of criminal refusal of a breath test in violation of K.S.A. 2012 Supp. 8-1025 on the ground that the statute is unconstitutional. We agree only with Base's third claim. Thus, we reverse Base's conviction of criminal refusal of a breath test and vacate his sentence for that count, but we affirm Base's conviction and sentence for the DUI.

1

FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2012, at around 12:30 a.m., Trooper Christopher Bauer of the Kansas Highway Patrol noticed two vehicles driving erratically on a roadway in McPherson County. One vehicle turned onto another road and Bauer kept following the other vehicle, a truck driven by Base, because he believed the truck was being driven more erratically than the other vehicle. According to Bauer, Base drove his truck left of the center line and was weaving in his own lane. At that point, Bauer activated his in-car camera. Base then crossed the fog line, traveling into the dirt on the passenger side of the road. Bauer then activated his emergency lights to execute a stop.

Upon approaching Base's truck, Bauer smelled a strong odor of alcohol. Bauer observed a passenger in the front passenger seat. Bauer then directed Base to exit his truck. As Bauer was speaking with Base outside of his truck, Bauer determined that the odor of alcohol was coming from Base. Bauer also noted that Base's speech was somewhat slurred and that he had bloodshot, watery eyes. Base was argumentative with Bauer during questioning, but he admitted to drinking "a couple beers" that evening.

Bauer asked Base to perform the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Base agreed to perform these tests, but he expressed a concern that his back problems may hinder his performance. Bauer noted that there were no adverse weather conditions that could potentially affect Base's performance on the tests. Bauer's in-car camera captured Base's performance of these tests.

The first test Base performed was the HGN. According to Bauer, the results of this test indicated that Base was impaired. Bauer next had Base perform the walk-and-turn test. Bauer observed five out of eight clues during this test. Finally, Base performed the one-leg-stand test. Bauer observed four out of four clues during this test. After the field

2

sobriety tests, Bauer read Base the standard warning for the preliminary breath test (PBT), but Base refused to take the PBT. Bauer then arrested Base for DUI.

After the arrest, Bauer performed an inventory search of Base's truck and found a cooler full of beer in the cab of the truck. Bauer then transported Base to the McPherson County Sheriff's Office. While riding to the sheriff's office, Base admitted that he had been drinking beer at a bar earlier in the evening. At the sheriff's office, Bauer read Base the implied consent advisory. Bauer then asked Base to take a breath test on the Intoxilyzer 8000, but Base refused. Bauer then booked Base into jail.

On August 9, 2012, the State charged Base with DUI in violation of K.S.A. 2012 Supp. 8-1567(a)(3); criminal refusal of a breath test in violation of K.S.A. 2012 Supp. 8-1025; refusal of a PBT in violation of K.S.A. 2012 Supp. 8-1012; and failure to maintain a single lane in violation of K.S.A. 2012 Supp. 8-1522. Counsel entered an appearance to represent Base in district court.

On June 26, 2013, Base filed a motion to suppress and/or dismiss. In the motion, Base argued that the evidence should be suppressed because Bauer initiated a traffic stop without reasonable suspicion and because Bauer arrested Base without probable cause. He also argued that K.S.A. 2012 Supp. 8-1025 was unconstitutional because criminalizing the refusal to consent to a search violates the Fourth Amendment to the United States Constitution. The district court held a hearing on Base's motion on September 3, 2013. Bauer testified at the hearing and related his account of the night of the arrest. Over Base's objection, the district court allowed Bauer to testify as to the HGN test.

On September 25, 2013, the district court filed a memorandum decision denying Base's motion in its entirety. The district court first determined that Bauer had a reasonable suspicion to stop Base under K.S.A. 2012 Supp. 8-1522(a) because Base's

3

truck crossed the fog line into the dirt and there were no adverse weather conditions. Next, the district court found that Bauer had a reasonable suspicion to detain Base after the initial stop because he was driving erratically, had watery eyes, slurred speech, admitted to consuming alcohol, and smelled of alcohol. The district court then ruled that Bauer had probable cause to arrest Base for the above reasons and because he exhibited multiple clues during the field sobriety tests and refused the PBT. With respect to the constitutionality of K.S.A. 2012 Supp. 8-1025, the district ruled that the statute was constitutional because there is no recognized right for a driver to refuse to take a blood-alcohol test.

The district court held a jury trial on December 13, 2013. At the beginning of the trial, Base pled guilty to the charge of refusal to submit to a PBT. Base also stipulated to the fact that he had a prior conviction for criminal refusal of a breath test. The parties agreed that the DUI and criminal refusal of a breath test charges would be decided by the jury, while the charge of failure to maintain a single lane would be decided by the court.

At the trial, the State admitted into evidence and published to the jury the video recording of Base's performance on the walk-and-turn test and the one-leg stand test. Parts of the video regarding the PBT refusal and the HGN test were not shown to the jury, and there was no mention of these tests at the trial. The State's only witness was Bauer, who related his account of the night of the arrest. Prior to Bauer's testimony, Base renewed his objections from his motion to suppress and/or dismiss. Base also asked for a continuing objection, which the district court granted.

Base testified in his own defense. He acknowledged that he had consumed "some beer" at the bar that evening, clarifying later that some beer meant two cans or bottles. Base testified that some beer spilled on him at the bar, implying that this was why he smelled so strongly of alcohol. Base also claimed that a dip in the road caused him to swerve over the fog line into the dirt. He testified that his speech may have been slurred

because he had chew in his mouth and his poor performance on the field sobriety tests was because he had a bad back. Finally, Base testified that he refused to take the evidentiary breath test because he did not understand the instructions and his friends had told him never to take the test.

After hearing the evidence, the jury convicted Base of DUI and criminal refusal of a breath test, and the district court acquitted Base of failure to maintain a single lane. At the sentencing hearing on February 21, 2014, the district court imposed a term of one year in the county jail for the DUI conviction, with Base to serve five days in jail and pay a $1,250 fine. Likewise, the district court sentenced Base to one year for the criminal refusal conviction, with Base to serve five days in jail and pay a $1,250 fine. The district court ruled that these sentences were to run concurrently. Finally, the district court fined Base $105 for his conviction of refusal to take the PBT. Base timely appealed.

MOTION TO SUPPRESS

Base first claims the district court erred in denying his motion to suppress the evidence. Specifically, Base argues that Bauer lacked reasonable suspicion to initiate a traffic stop for failure to maintain a single lane in violation of K.S.A. 2012 Supp. 8-1522(a). Next, Base argues that the detention after the initial stop was improper, claiming that the odor of alcohol and the admission of drinking did not establish reasonable suspicion for Bauer to conduct a DUI investigation. Finally, Base contends that Bauer did not have probable cause to arrest him. The State rebuts each of Base's arguments on this issue.

When the district court has denied a motion to suppress, the moving party must make a contemporaneous objection at trial to preserve the issue for appeal. K.S.A. 60-404; *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). Here, the district court denied Base's motion to suppress the evidence of his stop and arrest. When this evidence

5

was about to be admitted at trial, Base objected on the grounds set forth in his motion. He also asked for a continuing objection, which the district court granted. Thus, Base has preserved this issue for appeal.

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). A traffic stop is considered a seizure of the driver of the vehicle. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). To legally perform a traffic stop, a law enforcement officer must have a reasonable suspicion, requiring specific and articulable facts, that the driver committed or is about to commit a crime. See K.S.A. 22-2402(1).

Reasonable suspicion is a lower standard than probable cause, and what constitutes reasonable suspicion is based on the totality of the circumstances. *Sharp*, 305 Kan. at 1081. A traffic infraction is an objectively valid reason to effectuate a traffic stop. See *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). Whether a stop is reasonable is judged from the viewpoint of an objectively reasonable law enforcement officer. In other words, an officer's subjective motives for a stop, even if pretextual, will not invalidate an objectively reasonable stop. *State v. Garza*, 295 Kan. 326, 332, 286 P.3d 554 (2012).

Here, Bauer stopped Base for failing to maintain a single lane in violation of K.S.A. 2012 Supp. 8-1522(a). That statute provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

In *State v. Marx*, 289 Kan. 657, 675, 215 P.3d 601 (2009), our Supreme Court determined that in order to support reasonable suspicion to stop a vehicle for a violation of K.S.A. 8-1522(a), a law enforcement officer must articulate something more than an observation of "one instance of a momentary lane breach." Here, Bauer activated his in-car camera when he observed Base's truck cross the center line. Base's truck then returned to the proper lane and weaved within the lane. About two minutes into the video, Base's truck crossed the fog line and drove into the dirt. Thus, the video corroborates something more than a momentary lane breach. Bauer testified that there was no reason for Base to swerve as he did. While Base claims he crossed the fog line to avoid a dip in the road, the video contradicts Base's claim and he provides no explanation for the remainder of his driving errors. Considering Bauer's testimony and the video evidence, Bauer had a reasonable suspicion that Base committed a traffic infraction under K.S.A. 2012 Supp. 8-1522(a).

Generally, a traffic stop must not exceed the duration necessary to carry out the purpose of the initial stop. *State v. Thompson*, 284 Kan. 763, 774, 166 P.3d 1015 (2007). But if reasonable suspicion arises that the driver has committed an additional offense, the officer may detain a suspect for a continued investigation. See 284 Kan. at 774.

Citing *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 1101, 54 P.3d 532 (2002), Base argues that the odor of alcohol alone does not give rise to a reasonable suspicion that he was driving under the influence. Base's reliance on *Davenport* is misplaced because in that case, this court held that the odor of alcohol alone does not provide a reasonable suspicion *to support a stop*. 30 Kan. App. 2d at 1101. Here, Bauer

7

relied in part on the odor of alcohol to justify his continued detention of Base after the stop in order to conduct a DUI investigation. In *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 367, 102 P.3d 490 (2004), and *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 649, 70 P.3d 707 (2003), this court held that after a valid traffic stop, the odor of alcohol *was sufficient* to justify a continued investigation. In addition to the odor of alcohol, Bauer immediately detected that Base had bloodshot, watery eyes and slurred speech, and Base was argumentative with Bauer. Bauer testified that based on his training and experience, these facts all indicated that Base was impaired. As a result, under the totality of the circumstances, Bauer's detention of Base after the initial stop was valid as it was based on reasonable suspicion. See, e.g., *State v. Pollman*, 286 Kan. 881, 897, 190 P.3d 234 (2008) (holding that criminal obstruction together with the smell and admission of alcohol consumption created reasonable suspicion to pursue a DUI investigation).

Finally, Base argues that Bauer lacked probable cause to arrest him for DUI. Probable cause is

> "'a reasonable ground for belief of guilt; and this means less than evidence which would justify condemnation of conviction; probable cause exists where the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. [Citation omitted.]'" *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016) (quoting *State v. Fewell*, 286 Kan. 370, 377, 184 P.3d 903 [2008]).

Here, in addition to the above facts giving rise to reasonable suspicion, Base failed the field sobriety tests. Excluding the HGN test, Base exhibited five out of eight clues on the walk-and-turn test, and he exhibited four out of four clues on the one-leg-stand test, both of which indicated impairment. Base's explanation of having a bad back does not negate the evidence of his poor performance on the field sobriety tests; rather, this explanation is one factor to consider in the totality of the evidence. Finally, Base admitted

to Bauer that he had been drinking that evening. Considering the totality of the circumstances, we conclude that Bauer had probable cause to arrest Base for DUI.

One final point, any error regarding the admission of the HGN test at the hearing on the motion to suppress was harmless. Even without considering the results of the HGN test, Bauer still had probable cause to arrest Base for DUI. See *City of Wichita v. Molitor*, 301 Kan. 251, Syl. ¶ 2, 341 P.3d 1275 (2015). Accordingly, we conclude the district court did not err in denying Base's motion to suppress the evidence.

SUFFICIENCY OF THE EVIDENCE

Next, Base claims there was insufficient evidence to support his DUI conviction. Specifically, Base argues: "It is the contention of Mr. Base that the testimony regarding his operation of his vehicle does not support the idea that his consumption of alcohol was such that he was incapable of safely driving." The State asserts there was sufficient evidence, viewed in the light most favorable to the State, to support the DUI conviction.

Base may challenge the sufficiency of the evidence for the first time on appeal. See *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008). When the sufficiency of evidence is challenged in a criminal case, an appellate court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). The appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

K.S.A. 2012 Supp. 8-1567(a)(3) states: "Driving under the influence is operating or attempting to operate any vehicle within this state while: . . . under the influence of

9

alcohol to a degree that renders the person incapable of safely driving a vehicle." Base asserts the State did not sufficiently prove that he was incapable of driving safely.

Bauer testified that Base was driving erratically; the video evidence corroborates the fact that Base's truck crossed the fog line. Bauer also testified that he smelled a strong odor of alcohol coming from Base. Base had bloodshot, watery eyes, his speech was slurred, and he was argumentative with Bauer. Base admitted to drinking, and Bauer found a cooler full of beer in the cab of the truck. Base failed the walk-and-turn test and the one-leg-stand test; again, the video evidence corroborates the failure of these tests. While Base attempted to refute Bauer's testimony at trial, the jury chose to believe Bauer. Appellate courts do not reweigh the evidence or determine the credibility of witnesses. *Dunn*, 304 Kan. at 822. Viewing the evidence in the light most favorable to the State, a rational fact-finder could conclude that Base was incapable of safely driving his truck.

Base argues that the odor of alcohol and an admission to drinking is insufficient evidence to support a DUI conviction, citing *State v. Arehart*, 19 Kan. App. 2d 879, 878 P.2d 227 (1994). Base's attempt to rely on *Arehart* is misplaced. In that case, the district court found the defendant guilty of DUI, finding that the defendant's admission to having one drink of alcohol was sufficient to convict the defendant under K.S.A. 8-1567(a)(3). This court reversed the defendant's DUI conviction, concluding that "proof of consumption of alcohol, without more, is insufficient to support a drunk driving conviction." 19 Kan. App. 2d at 882. Base's case is clearly distinguishable from *Arehart*, as the State presented substantially more evidence than the odor of alcohol and an admission to drinking to support the DUI charge against Base.

Finally, in one sentence of his brief, Base appears to argue that he would not have been convicted of DUI if he had not also been charged with criminal refusal of a breath test because, according to Base, the jury placed a greater emphasis on the refusal of testing when determining whether he was guilty of DUI. Base cites no legal authority and

10

makes no further argument to support this position. A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). The failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015). Moreover, the district court instructed the jury that each crime charged against Base was a separate and distinct offense, and the jury must decide each charge separately on the evidence and law applicable to it, uninfluenced by the jury's decision as to any other charge. Appellate courts presume that jurors follow the jury instructions given to them by the district court. *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017).

CONVICTION FOR CRIMINAL REFUSAL OF A BREATH TEST

Finally, Base argues that the district court erred in denying his motion to dismiss the charge of criminal refusal of a breath test in violation of K.S.A. 2012 Supp. 8-1025 on the ground that the statute is unconstitutional. The question of whether a statute is unconstitutional is a question of law over which an appellate court has unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014). Constitutional grounds for reversal must be asserted in district court for the issue to be preserved for appellate review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Base filed a motion to dismiss in district court and argued that K.S.A. 2012 Supp. 8-1025 is unconstitutional, and he renewed that claim at trial. Thus, Base properly preserved this issue for appellate review.

In *State v. Ryce*, 303 Kan. 899, 909, 368 P.3d 342 (2016) (*Ryce I*), our Supreme Court explained that the Fourth Amendment of the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect people from unreasonable searches. The court found that the tests authorized by the Kansas implied consent law were searches subject to Fourth Amendment protections. 303 Kan. at 912-13. The court noted that a

11

search is unreasonable under the Fourth Amendment if it is conducted without a warrant, subject only to a few "well-delineated exceptions" to the warrant requirement. 303 Kan. at 913. While the court recognized that consent was a valid basis to perform a warrantless search, the court also held that the Fourth Amendment protected an individual's right to withdraw that consent. See 303 Kan. at 957. Thus, the court concluded that K.S.A. 2014 Supp. 8-1025, which punishes an individual for withdrawing consent, is facially unconstitutional because it is not narrowly tailored to serve the interests that the Kansas Legislature was trying to protect when it enacted the statute. 303 Kan. 899, Syl. ¶ 12.

After *Ryce I*, the United States Supreme Court issued an opinion in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). *Birchfield* involved statutes similar to K.S.A. 8-1025 from multiple states, which criminalized the refusal of blood and breath-alcohol testing. The *Birchfield* Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but does not permit warrantless blood tests. 136 S. Ct. at 2185. *Birchfield* also held that motorists cannot be deemed to consent to a blood test on "pain of committing a criminal offense." 136 S. Ct. at 2186.

In light of the decision in *Birchfield*, the Kansas Supreme Court granted the State's motion for a rehearing in *Ryce I*. However, our Supreme Court ultimately reaffirmed its holding in *Ryce I* that K.S.A. 8-1025 is facially unconstitutional. See *State v. Ryce*, 306 Kan. 682, 699-700, 396 P.3d 711 (2017) (*Ryce II*). Our Supreme Court emphasized that "the key to *Ryce I* and its sister cases is an issue of statutory interpretation . . . not, as in *Birchfield*, [with] whether warrantless blood and breath tests were reasonable under the Fourth Amendment." *Ryce II*, 306 Kan. at 699.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We have no indication that

our Supreme Court is departing from its position in *Ryce I* and *Ryce II*. Here, Base was convicted of criminal refusal of a breath test in violation of K.S.A. Supp. 2012 Supp. 8-1025. Because the statute has been declared facially unconstitutional by the Kansas Supreme Court, Base's conviction for violation of the statute must be reversed and his sentence for this conviction must be vacated.

Affirmed in part, reversed in part, and vacated in part.