No. 93,947

STATE OF KANSAS, *Appellee*, v. LEONARD POLLMAN, *Appellant*.

(190 P.3d 234)

882

Opinion filed August 8, 2008.

*Sam S. Kepfield*, of Hutchinson, argued the cause and was on the brief for appellant.

*Gary L. Price, Jr.*, assistant county attorney, argued the cause, and *David A. Page*, assistant county attorney, *Ty Kaufman*, county attorney, *Phill Kline*, former attorney general, and *Paul J. Morrison*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Leonard Pollman seeks to suppress evidence obtained during an investigation of whether he was driving under the influence of alcohol (DUI). His suppression motion raises the question of what level of "reasonable suspicion" is necessary before a motorist may be detained for a DUI investigation. The trial court concluded an investigation was permissible because Pollman had been observed driving his motorcycle, and then he allegedly obstructed the officer's official duties, admitted to drinking, and smelled of alcohol. The Court of Appeals disagreed and concluded these factors were not sufficient because the investigating officer had not observed any signs of impaired driving, did not immediately detect the smell of alcohol, did not know how much or when Pollman had been drinking, and did not observe typical signs of intoxication such as blurry eyes, slurred speech, or difficulty in walking or standing. *State v. Pollman*, No. 93,947, unpublished opinion filed April 27, 2007.

Upon our review, we conclude the Court of Appeals imposed too high a burden and the circumstances raised a reasonable suspicion that Pollman was DUI.

### Facts and Procedural History

On the evening of June 26, 2004, Leonard Pollman (Pollman) and his wife Vida Pollman (Vida) were traveling together in Mc-

Pherson, Kansas, each driving a motorcycle. Officer Michael Walline observed the couple for about 10 blocks. During that time, the only traffic violation the officer saw was Vida's failure to use a turn signal on her motorcycle. As a result, Officer Walline stopped Vida. Pollman also pulled over. Although Walline informed Pollman that he was not being stopped and needed to "move along," Pollman lingered. At one point, Walline told Pollman that if he wanted to stay in the area, he should take his motorcycle to a nearby parking lot. Instead, Pollman stood next to his motorcycle after parking it about one car length ahead of Vida's.

While asking Vida for her identification during the traffic stop, Officer Walline smelled an odor of alcohol on her breath, which prompted him to conduct a DUI investigation on Vida. A reserve officer was present with Officer Walline, and because Walline did not want Pollman to obstruct his wife's traffic stop, Walline asked the reserve officer to have Pollman step away. After Pollman refused to leave the vicinity of the traffic stop, Officer Walline called for back-up assistance. Walline's superior, Captain Allcock, arrived and stood with Pollman.

According to Allcock's testimony at the suppression hearing, he smelled alcohol on Pollman's breath. When asked, Pollman admitted to Allcock that he had been drinking. Allcock did not know how much alcohol Pollman had consumed or how long ago the drinking had occurred, but he observed Pollman to be coherent and cooperative. Other than the odor of alcohol, Allcock saw no other typical indicators signaling that Pollman had been drinking.

Meanwhile, Officer Walline was conducting Vida's traffic stop. Although he smelled an odor of alcohol on Vida's breath, Walline ultimately determined that she did not qualify for a DUI arrest. After issuing a warning about the traffic infraction, Walline told Vida she was free to go.

After that, Officer Walline walked with Vida to her motorcycle and made contact with Pollman, who was still standing with Captain Allcock. According to Walline's suppression hearing testimony, he spoke to Pollman because "I had already talked to him about getting away from my traffic stop and I wanted to speak with him

about obstruction and future charges if he were ever in that situation again."

Officer Walline asked Pollman for his driver's license, and Pollman handed it over. Walline was planning to talk to Pollman about his behavior as it related to his wife's traffic stop when Captain Allcock told Walline something like, "He's been drinking, you need to check him." Then Allcock had to leave the scene on other police business. When Walline asked Pollman if he had consumed any alcohol, Pollman replied that he had consumed "a few" beers.

Officer Walline asked Pollman to get in the patrol car. At that point, for the first time, Walline smelled an odor of alcohol on Pollman's breath. After that, Walline administered a preliminary breath test (PBT) which registered a breath alcohol concentration of .11. Walline also conducted field sobriety tests, including the walk-and-turn test and the one-legged-stand test. He was dissatisfied with Pollman's performance on both of these tests. Walline arrested Pollman, gave him a copy of the implied consent advisory form, and read it to him. In addition, Pollman consented to a blood test which revealed a blood alcohol concentration (BAC) of .10.

Based upon this evidence, the State charged Pollman with operating or attempting to operate a motor vehicle while the alcohol concentration in his blood or breath, as measured within 2 hours of the time of operating his vehicle, was .08 or more, after having two prior DUI convictions, in violation of K.S.A. 2005 Supp. 8-1567(a)(2), (f).

Pollman responded by filing two motions. In one motion, he sought to suppress the results of the PBT and BAC tests, arguing that law enforcement officers had neither reasonable suspicion to detain him nor probable cause to arrest him for DUI. The trial court denied Pollman's motion, finding there was no stop or detention because Pollman was told he could leave but chose to stay in the vicinity of his wife's traffic stop. Further, the trial court found that the combination of Pollman's admission to drinking, Captain Allcock's statement that Pollman smelled of alcohol, and Officer Walline's observance of Pollman operating a vehicle was sufficient reasonable suspicion to conduct a PBT. Further, the court found the PBT result provided grounds for Pollman's arrest.

In the second motion, Pollman sought dismissal of the case, arguing K.S.A. 2005 Supp. 8-1567(b), clarified at arguments on the motion to be K.S.A. 2005 Supp. 8-1567(a)(2), is overbroad and void for vagueness. The trial court denied that motion as well.

At trial, Pollman renewed his motion to suppress, but the court again denied the motion. As a result, the evidence of Pollman's PBT and BAC was admitted. Based upon this evidence, the jury found Pollman guilty of operating a motor vehicle while his BAC was .08 or more. Pollman's motions for a new trial and judgment of acquittal were denied. He was sentenced to 1 year in the county jail, but the court granted probation for 18 months.

Pollman timely appealed from his conviction, arguing (1) officers did not have reasonable suspicion to detain him for a DUI investigation, (2) officers did not have probable cause to arrest him for DUI, and (3) K.S.A. 2005 Supp. 8-1567(a)(2) is overbroad and void for vagueness.

The Court of Appeals panel addressed only the first of these arguments, determining the evidence should have been suppressed because there was not a constitutional basis for the prolonged detention and search of Pollman. Slip op. at 11-12. In reaching that ultimate conclusion, the panel made several preliminary determinations. First, in the panel's view, substantial competent evidence supported the trial court's finding that Pollman initially stopped of his own accord and voluntarily remained at the scene while Officer Walline completed the traffic stop involving his wife, Vida. Next, the panel determined that the initial voluntary encounter evolved into an investigatory detention when Walline retained possession of Pollman's driver's license. Slip op. at 7.

In light of this second determination, the panel considered whether, at the time the initial voluntary encounter evolved into an investigative detention, an objective law enforcement officer would have had a reasonable suspicion that Pollman had operated his motorcycle while under the influence of alcohol. The panel held that the totality of the circumstances did not provide the officer with such reasonable suspicion. Slip op. at 11.

The Court of Appeals honed in on several facts in reaching this conclusion:

"[I]t is clear that Pollman did not have a strong odor of alcohol about him when Officer Walline first approached him. Although Allcock noted an odor, Walline testified that during the entire time he stood with Pollman by the street he never detected an odor of alcohol. Second, although Pollman admitted to drinking a few beers there was no indication he recently had drunk to excess. Third, both Walline and Allcock confirmed that Pollman did not exhibit typical indicators of intoxication—bloodshot eyes, slurred speech, unsteady footing, or agitation. Fourth, the fact that Walline had followed Pollman and his wife for about 10 blocks without observing Pollman violate any traffic laws or engage in unusual driving also mitigated against a reasonable suspicion that Pollman was driving under the influence." Slip op. at 11-12.

The panel stated the totality of the circumstances in this case mirrored those discussed in *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 54 P.3d 532 (2002), where a different Court of Appeals panel found an insufficient factual basis to constitute a reasonable suspicion that the driver was violating the DUI statute. *Pollman*, slip op. at 12.

The Court of Appeals panel reversed the trial court's order denying Pollman's motion to suppress the results of the PBT and BAC tests and remanded the case. Given its holding, the panel declined to address Pollman's other issues, finding they were moot. Slip op. at 12.

We granted the State's petition for review. See K.S.A. 20-3018(b); K.S.A. 60-2101(b).

*Standard of Review*

On a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure by a preponderance of the evidence. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). When reviewing a trial court's suppression of evidence, an appellate court reviews the factual underpinnings by substantial competent evidence. The ultimate legal conclusion, however, is reviewed de novo. This court will not reweigh evidence, determine witnesses' credibility, or resolve conflicts in evidence. See *State v. Harris*, 284 Kan. 560, Syl. ¶ 9, 162 P.3d 28 (2007); *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

*Detention*

The Fourth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights § 15 guarantee that each person shall be free from unreasonable searches and seizures. In this case, Pollman attacks both the seizure and search that led to the evidence of his blood alcohol level. We focus first upon whether there was a seizure.

The trial court and Court of Appeals panel determined that Pollman's initial encounter with Officer Walline was voluntary. Indeed, if the encounter was voluntary, it would not be considered a seizure and would not implicate the protection of the Fourth Amendment. *State v. Lee*, 283 Kan. 771, Syl. ¶ 2, 156 P.3d 1284 (2007); *State v. Morris*, 276 Kan. 11, 19, 72 P.3d 570 (2003). A voluntary encounter can evolve into a detention, however. To determine if this evolution has occurred, the United States Supreme Court has devised a "totality of the circumstances" test. Under the test, law enforcement interaction with a person is voluntary, not a detention, if under the totality of the circumstances an officer's conduct conveys to a reasonable person that he or she is free to refuse the officer's requests or otherwise end the encounter. *State v. Thompson*, 284 Kan. 763, 775-76, 166 P.3d 1015 (2007); *Morris*, 276 Kan. at 19 (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 111 S. Ct. 2382 [1991]); see *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996).

A somewhat different standard was employed by the Court of Appeals panel in this case; it phrased the test as whether Pollman felt free to leave. The test as stated by the panel can be found in older United States Supreme Court cases but, as this court recently discussed in *Thompson*, the Supreme Court has refined the test. The change in the test was discussed in the 2007 decision of *Brendlin v. California*, 551 U.S. 249, 255, 168 L. Ed. 2d 132, 127 S. Ct. 2400 (2007):

" 'When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not. The test was devised by Justice Stewart in *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870,

64 L. Ed. 2d 497 (1980), who wrote that a seizure occurs if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," [446 U.S.] at 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (principal opinion). Later on, the Court adopted Justice Stewart's touchstone, [citations omitted], but added that when a person "has no desire to leave" for reasons unrelated to the police presence, the "*coercive effect of the encounter*" can be measured better by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." ' [Citations omitted.]" *Thompson*, 284 Kan. at 790.

Hence, the test is whether a reasonable person in Pollman's position would have felt free to decline Officer Walline's requests or otherwise terminate the encounter. See 284 Kan. at 790.

Applying this test to the facts of this case leads to the conclusion a reasonable person would have felt free to terminate the encounter initially. Pollman was informed unequivocally that he was not being stopped, and he was told to "move along." Pollman voluntarily remained at the scene while Walline completed the traffic stop involving Vida, despite repeated requests by Officer Walline and the reserve officer to persuade Pollman to leave the immediate area.

The circumstances of this voluntary encounter did not change significantly until Officer Walline approached Pollman and asked for and obtained his driver's license. The Court of Appeals found it was at this point—when Walline obtained and retained possession of Pollman's driver's license—that the initial voluntary encounter evolved into an investigatory detention. In considering this conclusion, it is noteworthy that an officer's mere request for identification or information about one's identity does not, by itself, constitute a seizure under the Fourth Amendment to the United States Constitution. *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty*, 542 U.S. 177, 185, 159 L. Ed. 2d 292, 124 S. Ct. 2451 (2004); *INS v. Delgado*, 466 U.S. 210, 216, 80 L. Ed. 2d 247, 104 S. Ct. 1758 (1984); see also *State v. McKeown*, 249 Kan. 506, 509, 819 P.2d 644 (1991) (officer may "ask the individual's name and request identification but cannot force the individual to answer"; individual is free to leave). But see *Delaware v. Prouse*, 440 U.S. 648, 659-63, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979) (officer did not have unfettered discretion to stop an automobile to conduct

license check, unless stopping was pursuant to a plan embodying explicit limitations on conduct of individual officers).

Nevertheless, if a law enforcement officer retains a driver's license, this can be a factor considered in the totality of the circumstances and may, absent offsetting circumstances, mean a reasonable person would not feel free to leave without his or her license. *Thompson*, 284 Kan. at 801; see *Johnson v. Campbell*, 332 F.3d 199, 205-06 (3d Cir. 2003) (voluntary encounter became detention after officer persisted in asking individual to roll down his vehicle window and provide identification); *United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir. 1995) (when officers retain an individual's license in the course of questioning, as general rule the individual will not reasonably feel free to terminate encounter); *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993) (retention of driver's license indicates to reasonable persons they are no longer "free to leave").

In addition to Officer Walline's retention of Pollman's driver's license, other circumstances would lead a reasonable person to conclude an investigation was under way and the encounter could not be voluntarily terminated: Captain Allcock told Officer Walline that Pollman needed to be checked, and Walline asked a potentially incriminating question about the consumption of alcohol. Thus, our independent review of the circumstances leads us to the same conclusion as that reached by the Court of Appeals panel—a reasonable person would not have felt free to refuse the officer's request or otherwise terminate the encounter from the point Officer Walline retained Pollman's driver's license and began asking potentially incriminating questions. See *Thompson*, 284 Kan. at 801; *State v. Reason*, 263 Kan. 405, 412, 951 P.2d 538 (1997).

### Reasonable Suspicion

The next question is whether this detention was statutorily and constitutionally permissible. Generally, investigatory detentions are permitted under K.S.A. 22-2402 and the Fourth Amendment to the United States Constitution if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime. See K.S.A. 22-

2402(1); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Thompson*, 284 Kan. at 773; see also *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975) (reasonableness of a seizure depends on balance of the public interest and individual's right to personal security free from arbitrary interference by officers).

In discussing "reasonable suspicion," this court has stated:

"Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an un-particularized suspicion or hunch must be articulated. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." *State v. Toothman*, 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 (1999).

We have furthered explained that the standard is evaluated from the viewpoint of a reasonable law enforcement officer:

" 'What is reasonable [suspicion] is based on the totality of the circumstances and is viewed in terms as understood by those versed in the field of law enforcement' (quoting *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 [1993]). . . .

" '[W]e judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." [Citation omitted.]' " *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998) (quoting *United States v. Mendez*, 118 F.3d 1426, 1431 [10th Cir. 1997]).

As this passage indicates, " 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000).

## City of Hutchinson v. Davenport

In examining whether this standard was met in this case, the Court of Appeals panel relied upon *Davenport*, 30 Kan. App. 2d. 1097. That decision arose after Davenport stopped by the police station to pick up his daughter. An officer noticed Davenport's eyes were bloodshot and detected an odor of alcohol on Davenport's breath. The officer told Davenport not to drive, and Davenport responded that he was on foot. Then, the officer watched as Davenport left the station, got into a pickup truck, and drove away. At no point, however, did the officer see Davenport commit any traffic violations or exhibit any other signs of intoxication.

The officer passed the information to a second officer who subsequently arrested Davenport for DUI. Likewise, the second officer did not observe Davenport commit any traffic violations or otherwise act inappropriately before stopping him.

The Court of Appeals in *Davenport* affirmed the district court's suppression of evidence and held that neither the odor of alcohol on Davenport's breath before entering the vehicle nor the fact that he falsely stated he was walking resulted in a "reasonable suspicion that justified stopping Davenport in the absence of some indication that he was intoxicated and too impaired to drive." 30 Kan. App. 2d at 1101. The panel further found the district court "properly determined that there were no articulate facts which create a suspicion that Davenport was driving while under the influence or was involved in any other criminal activity." 30 Kan. App. 2d at 1101.

Distinguishing its case from typical vehicle stop cases, the *Davenport* panel stated: "The City cites many cases to bolster its argument that the stop was proper. In each situation where the court found the stop to be proper, however, there were some facts which indicated that the defendant had engaged in some illegal activity prior to being stopped." 30 Kan. App. 3d at 1101.

The present case falls within the category of cases where the detention was justified by some illegal activity; Pollman had allegedly obstructed an officer performing a legal duty by failing to leave the area despite repeated requests. Even though Officer Walline

did not plan to arrest Pollman, this subjective intent does not drive our consideration of whether the circumstances objectively create a reasonable suspicion. See *Brendlin*, 551 U.S. at 260; *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996); *Thompson*, 284 Kan. at 804-05. Here, the criminal activity justified asking for identification and making further inquiry as to what motivated the conduct, with intoxication being one potential cause.

While this criminal activity was sufficient to justify the investigatory detention of Pollman, the State does not focus on this distinction but contends that this case is distinguishable from *Davenport* under an alternative rationale. Pollman, the State argues, was not stopped by an officer but voluntarily remained at the scene and "the odor of an alcoholic beverage and the admission by the Defendant to having consumed alcohol gave officers sufficient reason to extend the scope and duration of the consensual encounter and justified the detaining of the Defendant pending further investigation by the officers."

### *Nickelson, Stewart, and Pasek*

The State advances three Court of Appeals cases to support its position. In *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 102 P.3d 490 (2004), *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 70 P.3d 707 (2003), and *Pasek v. Kansas Dept. of Revenue*, No. 91,933, unpublished opinion filed November 24, 2004, three separate panels addressed the question of what level of reasonable suspicion is required to detain a suspect for a DUI investigation after lawful contact has previously been established.

In *Nickelson*, the law enforcement officer was concerned about the motorist's welfare upon observing his vehicle off the highway at 1 a.m. in cold weather in a secluded area. The officer approached the vehicle and asked if Nickelson was okay. According to the officer's testimony, " '[the alcohol odor] was pretty strong . . . and when he rolled down the window, it just—it just all hit me." 33 Kan. App. 2d at 361.

The Court of Appeals panel in *Nickelson* found the initial encounter with the motorist was a lawful public safety stop which

evolved into a detention for investigation of DUI. Noting the strong odor of alcohol, the panel concluded the officer had a reasonable suspicion to detain Nickelson to investigate whether he had committed a DUI violation. The panel distinguished *Davenport* because Nickelson was not initially stopped due to the odor of alcohol. The *Nickelson* court determined, in contrast, the officer had grounds to detain Nickelson for further investigation when he immediately smelled alcohol. 33 Kan. App. 2d at 367-68.

In *Stewart*, 31 Kan. App. 2d 645, the officer stopped the motorist's vehicle for an inoperable headlight. When the officer approached the vehicle, he noticed a "strong odor of alcohol emanating from inside the vehicle, which also contained a passenger." 31 Kan. App. 2d at 645. The officer asked Stewart to step out of the vehicle and accompany him to the patrol car. While they were inside the patrol car, the officer again smelled the odor of alcohol. Stewart was ultimately charged with DUI.

Stewart contended that being asked to accompany the officer to the patrol car was beyond the permissible scope of a routine traffic stop. The Court of Appeals panel disagreed and found that the officer was not obligated to ignore the odor of alcohol even though this was not the reason for the initial stop. The panel concluded that the officer's detection of the odor of alcohol constituted a sufficient reason to extend the scope and duration of the stop. 31 Kan. App. 2d at 649.

The third case cited by the State is the unpublished case of *Pasek* where an officer followed the motorist's truck which was transporting an accident victim to the hospital. The officer observed no impaired driving. At the hospital, the officer saw no indicators of intoxication, except he detected an odor of alcohol on Pasek's breath. When he asked whether Pasek had consumed alcohol, Pasek replied "a couple beers." The panel held that the odor of alcohol was sufficient to provide the officer with reasonable suspicion that Pasek had been drinking and driving and was, therefore, within his authority to further investigate. *Pasek*, slip op. at 9-10.

### Application of Cases

In the present case, the Court of Appeals panel was not persuaded by the State's reliance on *Nickelson, Stewart*, and *Pasek* for

a number of reasons. First, the panel pointed out that Pollman did not have a "strong odor" of alcohol when Officer Walline first approached him. Recognizing that Captain Allcock noticed the odor of alcohol coming from Pollman, the panel focused instead on the fact that Walline did not detect an odor of alcohol while standing with Pollman on the street. Second, the panel stated that "although Pollman admitted to drinking a few beers there was no indication he recently had drunk to excess." *Pollman*, slip op. at 11. Third, before the DUI investigation, neither Walline nor Allcock saw Pollman exhibiting typical indicators of intoxication such as bloodshot eyes, slurred speech, unsteady footing, or agitation. Fourth, the panel stated: "[T]he fact that Walline had followed Pollman and his wife for about 10 blocks without observing Pollman violate any traffic laws or engage in unusual driving also mitigated against a reasonable suspicion that Pollman was driving under the influence." Slip op. at 11-12.

The State takes issue with the Court of Appeals' focus on the lack of a "strong" odor of alcohol from Pollman. The State argues that the strength of the smell is subjective and also depends on factors such as masking agents (chewing gum, mints, tobacco products) and the environment where the odor is detected. For example, one might expect the odor of alcohol to be greater in an enclosed vehicle versus while standing outside near a motorcycle. The State suggests any odor of an alcoholic beverage is sufficient to give rise to a reasonable suspicion.

The circumstances of this case illustrate the State's position. Once Officer Walline and Pollman were in the confined space of the patrol car, Officer Walline smelled alcohol on Pollman's breath. Additionally, there is case support for the State's position. *E.g., Columbus v. Anderson*, 74 Ohio App. 3d 768, 770, 600 N.E.2d 712 (1991) ("moderate" odor of alcohol sufficient to establish reasonable suspicion).

We decline, however, to focus this case upon an issue of whether the odor of alcohol alone creates a reasonable suspicion that Pollman had committed a crime. Such a singular focus would be inappropriate because there were other weighty factors present in this case. First, Pollman had refused to follow lawful requests to

leave the immediate area of his wife's traffic stop. As previously noted, this conduct justified the initial detention of Pollman and an investigation of what might have motivated that conduct, which might have included impaired judgment because of intoxication. The Court of Appeals panel seems to have given this little or no weight in its determination of whether there was reasonable suspicion.

Second, in response to a question of whether Pollman had been drinking, a question legitimately linked to the discussion about obstruction, Pollman admitted he had consumed a few beers. His answer echoed Captain Allcock's statement to Officer Walline that Pollman had been drinking. The Court of Appeals panel discounted this factor because Officer Walline did not know how recently the alcohol had been consumed or the quantity of this consumption. Contrary to the panel's analysis, this lack of knowledge does not negate reasonable suspicion. In fact, information about the time and quantity of consumption would rarely be known by an officer who initiated a vehicle stop until after the investigation was under way and those questions were asked. If these facts became known during the investigation, the circumstances would factor into a probable cause determination.

Third and finally, Officer Walline smelled the odor of alcohol on Pollman's breath, which occurred after Walline had observed Pollman driving his motorcycle. The fact that the odor was not particularly strong may weigh in the equation but does not erase reasonable suspicion.

This factor became known while Officer Walline and Pollman were in the patrol car. Up to that point, the detention could be justified by Pollman's obstruction of official duties. As the circumstances coalesced, a reasonable suspicion of DUI existed. See, e.g., K.S.A. 8-1001(b); K.S.A. 8-1012; *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 (1993) (checkpoint stop extended with court noting there "were further reasons for his continued detention based on the officer's smell of alcohol on defendant's breath"); *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 646-48, 70 P.3d 707 (2003); *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998); see

also *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (odor of alcohol from vehicle of legally stopped motorist was sufficient to expand scope of investigation); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (odor of alcohol on breath of legally stopped motorist was sufficient to expand scope of investigation); *State v. Nelson*, 134 Idaho 675, 679-80, 8 P.3d 670 (Ct. App. 2000) (no initial seizure; odor of alcohol plus admission to drinking sufficient to request testing); *Frensemeier v. State*, 849 N.E.2d 157, 162 (Ind. App. 2006) (odor of alcohol on driver's breath during the course of an accident investigation can be sufficient to establish probable cause); *State v. Blackburn*, 115 Ohio App. 3d 678, 680-81, 685 N.E.2d 1327 (1996) (officer administered field sobriety tests after noticing an odor of alcohol and after motorist admitted to consuming "a few beers").

Only after these factors created a reasonable suspicion did Officer Walline perform the field sobriety tests and PBT. The results of these tests, along with the factors supporting reasonable suspicion, would combine to warrant consideration of whether there was probable cause to arrest Pollman. That issue was not decided by the Court of Appeals and is not, therefore, before us on the petition for review.

With our focus being on whether there was reasonable suspicion to extend the scope and detention of the encounter beyond an investigation for obstruction of legal duty, we note that the factors relied upon by the Court of Appeals might cause us pause if we were considering whether there was probable cause—*i.e.*, a preponderance of the evidence given the totality of the circumstances—at the point in time when Officer Walline performed the field sobriety tests. *Cf. State v. Fewell*, 286 Kan. 370, 184 P.3d 903 (2008) (divided court with majority concluding smell of burnt marijuana *and* obvious lying about marijuana in automobile sufficient to establish probable cause). Here, however, the less rigorous standard of reasonable suspicion is applicable; while the various factors discussed by the Court of Appeals panel must be considered, those factors do not dissipate the reasonable suspicion created by Pollman's obstruction, the odor of alcohol, and his admission to drink-

ing. Nor do the factors cited by the panel make the suspicion unreasonable.

Instead, we conclude the totality of the circumstances—including criminal obstruction of official duty, admission to drinking, and smell of alcohol—provided reasonable suspicion sufficient to justify an investigation into whether Pollman, who was observed driving, was operating his motorcycle while under the influence of alcohol. In other words, there existed a minimum level of objective justification sufficient for the investigative detention of Pollman.

## Remand

Because the Court of Appeals panel reached the opposite conclusion, it did not address the questions of whether K.S.A. 2005 Supp. 8-1567(a)(2) is unconstitutionally overbroad and void for vagueness and whether the arrest was supported by probable cause. Consequently, these issues are not before us for review. Therefore, this case is remanded for consideration of these questions.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals with directions. The decision of the trial court on the single issue subject to our review is affirmed.