NOT DESIGNATED FOR PUBLICATION

No. 123,715

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TRAVIS SCOTT MOSIER,
*Appellee*.


MEMORANDUM OPINION


Appeal from Rice District Court; STEVEN E. JOHNSON, judge. Opinion filed August 13, 2021. Affirmed.


*Remington S. Dalke*, county attorney, and *Derek Schmidt*, attorney general, for appellant.


*Michael S. Holland II*, of Holland and Holland, of Russell, for appellee.


Before SCHROEDER, P.J., MALONE, J., and BURGESS, S.J.


MALONE, J.:  The State appeals the district court's decision to grant Travis Scott Mosier's motion to suppress evidence in a prosecution for driving under the influence (DUI). A law enforcement officer stopped Mosier for a tag violation but then conducted a DUI investigation after smelling a "hint" of alcohol on his breath and after Mosier admitted that he "had a few" drinks. The State argued in district court that the odor of alcohol and Mosier's admission established reasonable suspicion for the officer to extend the traffic stop to conduct a DUI investigation, but the district court disagreed. We have jurisdiction over the State's interlocutory appeal under K.S.A. 2020 Supp. 22-3603.


1

Reasonable suspicion is a lower standard than probable cause and courts must examine the totality of the circumstances from the view of a trained law enforcement officer. "The standard 'depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Courts . . . must permit officers to make 'commonsense judgments and inferences about human behavior.'" *Kansas v. Glover*, 589 U.S. ___, 140 S. Ct. 1183, 1188, 206 L. Ed. 2d 412 (2020). Still, a mere hunch about a possible crime does not create reasonable suspicion. 140 S. Ct. at 1187. Although the facts here present a close question, we agree with the district court that the officer lacked reasonable suspicion to extend the limited scope of the traffic stop to conduct a DUI investigation. Thus, we affirm the district court's judgment.

*Factual and procedural background*

On June 13, 2020, at 2 a.m., Rice County Sheriff's Deputy Joshua Blank ran the license plate on a Jeep driven by Mosier and learned that the license plate came back to a Bonneville. Blank initiated a traffic stop and activated his body camera. The body camera did not record video of the stop but did record audio. Blank approached the driver's side of the Jeep and "got a hint of alcohol or intoxicating beverage off of [Mosier.]"

Blank told Mosier about the license plate not matching up, but Mosier said that it should match the Jeep. Blank asked Mosier to exit the Jeep and they walked back to the license plate. Once there, Blank noticed the spare tire mount had covered the lettering. What he had originally perceived and ran as an F was an E. Blank was sure he smelled alcohol at that point, but he did not describe the smell as being moderate or strong.

Blank asked Mosier what he had been doing that night and if he had anything to drink. Mosier stated he "'had a few,'" but he did not say how much earlier in the evening he had been drinking. Blank then told Mosier to turn off the vehicle and he went back to his patrol car to run the correct license plate. After hearing back from dispatch that the

2

plate and documents matched Mosier's Jeep, Blank informed dispatch that he would be "conducting SFSTs [standard field sobriety tests]."

Blank got out of his patrol car, went back to the Jeep, and again asked Mosier how much he had to drink, to which Mosier responded, "probably plenty." Blank then informed Mosier he would "go ahead and conduct some evaluations" to which Mosier responded, "Yes, sir." Blank conducted the field sobriety tests and arrested Mosier for suspicion of driving under the influence. After being transported to the jail, Mosier submitted to a breath test that resulted in a BAC reading of 0.132. The State charged Mosier with DUI based on operating a vehicle with a BAC of 0.08 or more.

Mosier moved to suppress the evidence, arguing that Blank lacked reasonable suspicion to extend the traffic stop to conduct a DUI investigation, and the district court held a hearing. The State admitted Blank's body camera audio into evidence. Blank also testified about smelling a "hint" of alcohol on Mosier and his admission that he "'had a few.'" Blank said he asked Mosier what a few meant, and he responded, "'I don't know. A few.'" Blank testified that he then asked if Mosier would be willing to do field sobriety testing. Blank said Mosier was "very cooperative and said that he would." On cross-examination, Blank admitted that he noticed the hint of alcohol but otherwise observed no other indications of impairment before he conducted the field sobriety tests.

After hearing Blank's testimony, but before listening to the body camera audio, the district court found the initial stop for the tag violation to be appropriate but found no reasonable suspicion to otherwise require Mosier to submit to field sobriety tests. The district court explained that Blank's testimony made it sound like Mosier voluntarily agreed to the field sobriety tests and the court asked the parties to brief the voluntariness of the field sobriety tests and its effect on extending the stop. The State later waived any argument that the traffic stop was properly extended by Mosier's consent but asked the district court to reconsider its ruling on reasonable suspicion.

3

On February 10, 2021, the district court filed a memorandum decision granting Mosier's motion to suppress. On the consent issue, the district court stated that it listened to the audio recording of the stop and "found [Blank's] testimony to not be completely accurate regarding [Mosier's] consent . . . to the field sobriety tests. Therefore, the court is not finding there was consent to extend the stop even if it was possible." The district court framed the issue as "whether or not the slight smell of alcohol on [Mosier's] breath and the admission that he had previously consumed alcohol are sufficient grounds to extend the traffic stop for the purpose of the field sobriety tests." Relying on *Chambers v. Kansas Dept. of Revenue*, No. 115,141, 2017 WL 1035442 (Kan. App. 2017) (unpublished opinion), the district court found the slight smell of alcohol and Mosier's admission were insufficient to establish reasonable suspicion to extend the traffic stop to conduct a DUI investigation. The State timely filed this interlocutory appeal.

*Did the district court err in granting Mosier's motion to suppress?*

The State claims the district court erred in granting Mosier's motion to suppress. More specifically, the State contends that Mosier's admission that he "had a few" and "probably plenty" along with the odor of alcohol created a reasonable suspicion for Blank to extend the traffic stop to conduct a DUI investigation. To support its claim, the State relies mainly on *Pasek v. Kansas Dept. of Revenue*, No. 91,933, 2004 WL 2694279 (Kan. App. 2004) (unpublished opinion), a 2004 Kansas driver's license suspension case, in which our court found that the odor of alcohol on a driver's breath established reasonable suspicion allowing an officer to conduct field sobriety testing.

Mosier responds that he could find no case upholding a DUI investigation based solely on the "hint" of alcohol on the driver's breath. He focuses on the fact that Blank conducted the DUI investigation without observing any evidence of impaired driving. Mosier cites *State v. Pollman*, 286 Kan. 881, 190 P.3d 234 (2008) to support his argument that reasonable suspicion did not exist to extend the scope of the traffic stop.

4

When, as here, the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Moreover, our Supreme Court has stated that whether reasonable suspicion exists is a question of law subject to unlimited review by appellate courts. *State v. Jones*, 300 Kan. 630, 642, 333 P.3d 886 (2014).

The Fourth Amendment to the United States Constitution protects people from unlawful seizure and a traffic stop constitutes a seizure of the driver. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). To comply with the Fourth Amendment, law enforcement must "'have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime.'" 305 Kan. at 1081; K.S.A. 22-2402(1). Reasonable suspicion is a lower standard than probable cause and courts must examine the totality of the circumstances from the view of a trained law enforcement officer. *Sharp*, 305 Kan. at 1081. "Reasonable suspicion is "'a particularized and objective basis" for suspecting the person stopped of criminal activity.'" *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2018).

"During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation." *State v. Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011). But generally, once the officer determines that the driver has a valid license and the purpose of the traffic stop has ended, the driver must be allowed to leave without further delay. 292 Kan. at 816.

An encounter between a law enforcement officer and a driver can be extended beyond the scope of a routine traffic stop if it becomes consensual and the driver voluntarily agrees to submit to more questioning. *State v. Thompson*, 284 Kan. 763, 775, 166 P.3d 1015 (2007). Absent consent, an officer may expand the investigative detention beyond the duration necessary to fulfill the purpose of the initial stop only if there is an

5

objectively reasonable and articulable suspicion that criminal activity was or is taking place. *Jones*, 300 Kan. at 641.

Here, neither party disputes the validity of the original traffic stop even though it stemmed from Blank's mistake of fact. Likewise, the State waived any argument in district court that the traffic stop was properly extended by Mosier's consent, and it asserts no such argument on appeal. Instead, the only question on appeal is whether Blank had reasonable suspicion of criminal activity when he extended the limited scope of the traffic stop for a possible tag violation to investigate Mosier for DUI.

To begin, as Mosier points out in his brief, the State mischaracterizes the facts that can be used to support a finding that Blank had a reasonable suspicion to extend the stop. The State asserts in its brief that after Mosier admitted that he "had a few," Blank asked Mosier "one final follow-up question" about how much he had to drink, and Mosier responded "probably plenty" before Blank extended the traffic stop. But the undisputed evidence does not support the State's argument. Blank did not ask Mosier the second question about how much he had to drink until after Blank learned that Mosier's tag was valid, and Blank already had decided to extend the traffic stop for a DUI investigation.

When Blank learned from dispatch that the tag on Mosier's Jeep was valid, the original purpose of the traffic stop ended. But Blank told dispatch at that time that he would be conducting field sobriety tests on Mosier. Blank then returned to Mosier's Jeep and asked him again how much he had to drink. Blank already had informed dispatch that he would be conducting field sobriety tests before Mosier told him that he "probably [had] plenty" to drink, and the follow-up question had nothing to do with the tag violation. Thus, Blank extended the traffic stop before Mosier admitted to probably drinking plenty. As a result, the question here is whether the "hint" of alcohol on Mosier and his response that he "had a few" established reasonable suspicion to extend the stop.

6

The odor of alcohol and its effect on establishing a reasonable suspicion for a DUI investigation has been examined in many cases. The parties focus on three cases—*Pasek*, *Pollman*, and *Chambers*—in arguing whether reasonable suspicion existed in this case.

In *Pasek*, law enforcement arrived at the scene of an accident and learned that the victim had been transported to the hospital in a red truck. Law enforcement saw the truck driving through town towards the hospital at a high rate of speed. At the hospital, the driver carried the victim into the emergency room without stumbling or slurring his speech. Kansas Highway Patrol Trooper Darrin Hirsh started to talk to the driver, Pasek, about the victim and noticed he had the odor of alcohol on his breath. When asked, Pasek told Hirsh that he had "'a couple of beers.'" 2004 WL 2694279, at *1. Pasek completed field sobriety tests and submitted to a breath test. Based on the results, the Kansas Department of Revenue (KDR) suspended Pasek's driving privileges. He petitioned for judicial review, arguing the odor of alcohol alone is not sufficient suspicion of DUI. The district court agreed and vacated the suspension. 2004 WL 2694279, at * 1.

The KDR appealed and this court addressed the issue of whether law enforcement officers "have reasonable suspicion to conduct field sobriety tests if the driver has an obvious odor of alcohol on his or her breath." 2004 WL 2694279, at *3. This court held:

> "The odor of alcohol on Pasek's breath indicated the possibility that he was driving under the influence of alcohol. At this point, Hirsh certainly did not have probable cause to arrest Pasek for driving under the influence of alcohol. However, while all the normal indicators of intoxication were not present, Hirsh unquestionably had reasonable suspicion that Pasek had been drinking and driving and Hirsh was within his authority to request Pasek perform the normal filed sobriety tests." 2004 WL 2694279, at *4.

More recent cases seem to require more than the mere odor of alcohol to establish reasonable suspicion for a DUI investigation. In *Pollman*, law enforcement officers at first stopped Pollman's wife on her motorcycle for a traffic violation. Pollman, who was

7

riding a separate motorcycle, refused to follow officers' instructions to leave the area. Another officer arrived and talked to Pollman. The officer smelled alcohol on Pollman's breath and when asked, Pollman admitted he had consumed a few beers. Officers then conducted field sobriety tests and evidentiary breath tests on Pollman and arrested him for DUI. Pollman moved to suppress the evidence arguing there was no reasonable suspicion to detain him, which the district court denied.

On appeal, the Kansas Supreme Court explicitly declined to determine whether the odor of alcohol alone supported a reasonable suspicion because there were three factors present to support finding a reasonable suspicion: (1) Pollman's failure to leave the immediate area, leading to obstruction; (2) Pollman's assertion that he drank a few beers; and (3) the odor of alcohol. 286 Kan. at 895-96. Our Supreme Court pointed out in its analysis that the obstruction supported a finding of reasonable suspicion because it might have been the result of impaired judgment caused by intoxication, and the officer's question of whether Pollman had been drinking was appropriate because it was "legitimately linked to the discussion about obstruction." 286 Kan. at 895. Thus, the court held that "there existed a minimum level of objective justification sufficient for the investigative detention of Pollman." 286 Kan. at 897.

Finally, as recognized by the district court, Mosier's case is almost identical to *Chambers.* In that case, the officer stopped Chamber's for a defective tag light and noticed the odor of alcohol on Chambers' breath. Chambers also admitted that he "'had a couple'" when asked by the officer if he had been drinking. 2017 WL 1035442, at *1. This court recognized that the case presented a "close call" but concluded that the odor of alcohol and the admission of drinking two beers did not amount to reasonable suspicion to request a preliminary breath test. 2017 WL 1035442, at *6. This court pointed to *Pollman* and explained that only two of the three factors in that case were present in Chambers' case. Further, it explained that Chambers' admission to drinking two beers was unlikely to have rendered him unsafe to drive. 2017 WL 1035442, at *7.

8

Mosier's case, like *Chambers*, falls between *Pollman* and *Pasek*. As in all three cases, Blank smelled alcohol on Mosier's breath. Similarly, Mosier admitted to drinking. But Mosier's admission is not as strong a factor as it was in *Pollman* given the totality of the circumstances. Unlike the obstruction in *Pollman*, which could have been because of intoxication, there is no reasonable link between a tag violation and intoxication. Further, and contrary to the State's assertion, Mosier's admission that he "had a few" likely does not establish that Mosier was driving with an illegal level of alcohol in his body. See *City of Wichita v. Molitor*, 301 Kan. 251, 267, 341 P.3d 1275 (2015) (explaining that driver's admission to having two or three beers "would be evidence that tends to refute the notion that the driver was operating the vehicle with an illegal level of alcohol in his or her body, *i.e.*, it is questionable whether two or three beers would raise the alcohol concentration in the breath or blood of a normal size man to .08 or more").

The law requires courts to examine the "totality of the circumstances" to determine the existence of reasonable suspicion. *Sharp*, 305 Kan. at 1081. This means that courts must consider the existence of evidence supporting reasonable suspicion along with the lack of other evidence that typically supports reasonable suspicion in similar cases. Blank detected a "hint" of alcohol coming from Mosier and when asked about drinking, Mosier stated he "had a few." But Mosier did not say how much earlier in the evening he had been drinking. Blank testified he did not get a good look at Mosier's eyes until the evaluations to tell if they were bloodshot or watery. There is no evidence that Mosier slurred his speech or fumbled for his driver's license. Blank observed Mosier standing next to his Jeep and did not notice any problems with his balance. Most importantly, Blank did not observe any impaired driving by Mosier, like weaving or swerving, and he did not observe Mosier commit any traffic infractions. Mosier reacted appropriately to Blank's emergency equipment when Blank pulled him over for the tag violation.

It is not illegal to drink alcoholic beverages and then drive a vehicle; in fact, law-abiding citizens combine these two activities routinely. It is only illegal for a person to

drive with a blood-alcohol level above the legal limit or to drive under the influence of alcohol to a degree that renders the person incapable of safely driving. See K.S.A. 2020 Supp. 8-1567(a). Anyone who stops at a tavern for a couple of beers or drinks moderately at any social gathering may have a slight odor of alcohol on their breath on the drive home. But this is not a sign of illegal activity without any evidence of impaired driving. Blank detected a "hint" of alcohol on Mosier's breath and he admitted that he "had a few." We agree with the district court that this evidence alone was insufficient for Blank to have a reasonable and articulable suspicion that Mosier had committed, was committing, or was about to commit a crime. See K.S.A. 22-2402(1); *Jones*, 300 Kan. at 641.

We are mindful that reasonable suspicion is a minimal standard to support an investigative detention by law enforcement. When Blank learned from dispatch that Mosier's tag was valid and he had stopped him by mistake, he could have approached Mosier and asked for his consent to answer more questions. Had Mosier voluntarily consented to answer more questions and then admitted that he "probably [had] plenty" to drink that evening, this evidence may have been enough to tip the scale and establish reasonable suspicion for Blank to extend the traffic stop to conduct a DUI investigation. Each case must be judged on its individual facts and the facts here present a close question on reasonable suspicion. But for the reasons we have stated, we find that Blank lacked reasonable suspicion to extend the traffic stop to conduct a DUI investigation, and the district court did not err in granting Mosier's motion to suppress.

Affirmed.