NOT DESIGNATED FOR PUBLICATION

No. 126,888

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACOB CHURCHILL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral argument. Opinion filed February 21, 2025. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Brian Koch*, assistant district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and PICKERING, JJ.

PER CURIAM: Jacob Churchill appeals his convictions for possession of methamphetamine and misdemeanor possession of drug paraphernalia. He argues that the district court erred by denying his motion to suppress evidence consisting of items found in his parked and unattended car. Law enforcement deployed a narcotics-detecting dog to perform a free air sniff around the car, which resulted in the seizure of unlawful items. On appeal, he contends that the vehicle was unlawfully seized under the Fourth Amendment to the United States Constitution. Because we find that the dog sniff did not

1

constitute a search or seizure under the Fourth Amendment, we affirm the trial court's denial of the motion to suppress.

FACTUAL AND PROCEDURAL HISTORY

Because the parties stipulated to the facts of this case, they are undisputed.

Officers from the Hutchinson Police Department searched a residence in Reno County, Kansas. Upon entering the residence, Officer Andrew Nunnelley observed two males seated on the couch and a female seated in a chair in the living room. Nunnelley asked the individuals for their identities but did not request any documentation. One of the males was later identified as Churchill. Churchill openly stated that he owned and drove the black Chevrolet Silverado truck parked on the public street outside the residence.

Nunnelley observed a black Chevrolet Silverado with an Oklahoma license plate legally parked on the public roadway. He exited the residence, retrieved his certified narcotics-detecting dog and conducted a free air sniff around the vehicle. The dog alerted to the presence of illegal narcotics. Based on the dog's indication, Nunnelley returned to the residence, informed Churchill that he was no longer free to leave, and requested the keys to his truck. After obtaining the keys, Nunnelley searched the vehicle.

During the search, Nunnelley discovered backpacks containing items including a bulbous glass pipe with white crystal residue (believed, based on his training and experience, to be methamphetamine), a baggie of crystal substance (also believed to be methamphetamine), a digital scale with white crystal residue, a transparent container with yellowish residue suspected to be THC oil, and other baggies with crystal residue suspected to be methamphetamine. Nunnelley returned to the residence to inform Churchill of his *Miranda* rights. Churchill admitted the methamphetamine was his. He

2

was ultimately charged with one count each of possession of methamphetamine and possession of drug paraphernalia.

Churchill moved to suppress the evidence obtained from his car, alleging an unconstitutional search and/or seizure of his person and property. After a hearing, the district court denied Churchill's motion, stating:

> "Counsel, I watched Officer Nunnelley's portion of the video and reviewed your briefs and the case law. State v. McMillin [23 Kan. App. 2d 100, 927 P.2d 949 (1996)] controls the outcome of the motion to suppress. The defendant was not detained and the free-air sniff did not constitute a search."

After a bench trial on the stipulated facts, Churchill was convicted as charged of possession of methamphetamine and misdemeanor possession of drug paraphernalia. The district court sentenced Churchill to underlying prison terms of 11 months and 6 months respectively, to run concurrent, but released him on 12 months of probation.

Churchill timely appeals.

ANALYSIS

On appeal, Churchill argues that using a drug-sniffing dog on his legally parked vehicle violated his constitutional rights by interfering with his ability to access and use the vehicle, constituting an unlawful seizure. He asserts the dog sniff was a seizure because it amounted to a meaningful interference with his possessory rights to his vehicle.

I. WE REVIEW THE TRIAL COURT'S RULING DE NOVO

When the district court's decision is based on stipulated facts, the standard of appellate review is de novo. *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502 (2022). The appellate court is in as good a position as the district court to examine and consider the evidence and to determine what the facts establish as a matter of law. *Weber v. Board of Marshall County Comm'rs*, 289 Kan. 1166, 1175-76, 221 P.3d 1094 (2009).

Even so, appellate courts will still view the stipulated facts in the light most favorable to the State when conducting de novo review for sufficiency of the evidence. *Scheuerman*, 314 Kan. at 587. When reviewing stipulated facts, the appellate court cannot ignore the circumstantial evidence presented by the stipulations and the inferences fairly deducible therefrom. *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016).

Although Churchill initiated the constitutional challenge to the search and seizure by moving to suppress, the State bears the burden of proving the legality of the challenged search and seizure. K.S.A. 22-3216(2); *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

II. CHURCHILL'S FOURTH AMENDMENT RIGHTS WERE NOT INFRINGED

The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment Due Process Clause, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights also guarantees that citizens are free from unreasonable searches and seizures.

The Fourth Amendment to the United States Constitution provides the same protection. It prohibits unreasonable searches and seizures and provides that warrantless

4

searches are, per se, unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024).

Churchill's interaction with Nunnelly occurred in a private residence subject to a corrections warrant while Churchill was a guest at the home. Nunnelly testified that while he collected Churchill and the other guests' names, dates of birth, and addresses verbally; he did not ask for identification. He informed Churchill and the other two guests that they were not subject to the corrections search and were free to go. See *State v. Pollman*, 286 Kan. 881, Syl. ¶ 1, 190 P.3d 234 (2008) ("A law enforcement officer's interaction with a person is voluntary, not detention, if under the totality of the circumstances, the officer's conduct conveys to a reasonable person that he or she is free to refuse the officer's requests or otherwise end the encounter."). Churchill does not claim that he was detained or restrained by law enforcement. He acknowledges that "[h]e was not under arrest and was free to go."

Instead, Churchill argues that he was impaired in his ability to retrieve his vehicle because "[w]hile the drug dog was doing its free air sniff, [he] was not able to leave had he wanted to."

A. *Churchill Had No Expectation of Privacy in his Truck Parked on a Public Street*

The United States Supreme Court and the Kansas Supreme Court have consistently ruled that individuals have no reasonable expectation of privacy regarding the exterior of a vehicle parked in a public lot. This is sometimes referred to as the privacy-based approach to the Fourth Amendment. The touchstone of this analysis is whether a person has a constitutionally protected reasonable expectation of privacy. The answer involves a two-part inquiry: (1) has the individual manifested a subjective expectation of privacy in the object of the challenged search; and (2) is society willing to

5

recognized that expectation as reasonable? *California v. Ciraolo*, 476 U.S. 207, 211, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986).

Under this approach, using a trained narcotics-detecting dog to perform a free air sniff around the exterior of a vehicle is not considered a search under either the United States Constitution or the Kansas Constitution. See, e.g., *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005) (The use of narcotics-detection dog in a situation that does not expose noncontraband items that otherwise would remain hidden from public view does not implicate legitimate privacy interests.); *United States v. Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) (holding dog sniff of luggage in a public place does not implicate a privacy interest under the Fourth Amendment); *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993) (no more expectation of privacy in a particular motel parking space than anyone else—even if staying at the motel); *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 (1993) (holding a dog's sniff of a vehicle's exterior is not a search under the Fourth Amendment); *People v. Lindsey*, 181 N.E.3d 1, 6 (Ill. 2020) (free air sniff outside door of motel room defendant was staying in did not violate the Fourth Amendment under the privacy-based approach.).

Here, Churchill was not detained and his car was in a public place. The free air sniff did not infringe on any privacy interest he may have in the contents of the car.

B. *The Dog's Free Air Sniff Was Not a Seizure of Property*

Churchill concedes that a dog's free air sniff is not considered a search under the Fourth Amendment to the United States Constitution. But even so, he contends it can constitute a seizure of his property. The district court rejected his claim and held that *State v. McMillin*, 23 Kan. App. 2d 100, 927 P.2d 949 (1996), controlled the outcome. In *McMillin*, a panel of this court found that a dog sniff of the exterior of a car parked in a public parking lot, which does not cause meaningful interference with the owner's

6

possessory interests in the car, is not a seizure as contemplated by the United States or Kansas Constitutions. 23 Kan. App. 2d 100, Syl. ¶ 2. Churchill argues that using a drug-sniffing dog on his legally parked car constituted an unlawful seizure here because it interfered with his ability to access and use the vehicle—a condition noted by the *McMillan* panel as modifying the general rule. He contends this amounted to a meaningful interference with his possessory property rights.

This is known as the property-based approach to the Fourth Amendment, and it is the one we most often think of in terms of an intrusion into a person's home, papers, or effects without a warrant. It is an interference with their possessory interest in protected property. So in the case of *Florida v. Jardines*, 569 U.S. 1, 11-12, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013), the United States Supreme Court found that a free air dog sniff outside the front door of a person's home was a physical intrusion into property and violated the Fourth Amendment. The Supreme Court noted that the privacy-based approach has been added to the Fourth Amendment jurisprudence and is not a substitute for "the traditional property-based understanding of the Fourth Amendment." 569 U.S. at 11. So, it is unnecessary to consider the privacy-based approach when the government gains evidence by physically intruding on constitutionally protected areas. 569 U.S. at 11.

*McMillin* addressed the distinction between analyzing search and seizure issues separately. The *McMillin* court examined the rulings in *Place* and *Barker* to explore the distinction between dog sniffs as searches and as detentions or seizures. In *Place*, 462 U.S. at 706-09, the Court addressed whether a canine sniff qualifies as a "search" separately from whether detaining luggage based on reasonable suspicion was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Court first determined that a canine sniff is not a search (privacy-based approach) before evaluating whether the 90-minute detention of the luggage, based on reasonable suspicion of drug-related activity, complied with *Terry* (a seizure under the property-based approach). *Place*, 462 U.S. at 704. Similarly, in *Barker*, the court emphasized that a dog sniff is not a

search (privacy-based approach) before considering whether the duration of the defendant's detention exceeded lawful limits (a seizure under the property-based approach). 252 Kan. at 958. Both cases distinguish between the dog sniff as a search versus dog sniffs as detentions or seizures, treating them as separate considerations, and determining neither requires law enforcement to detain a defendant before conducting a lawful canine sniff. *McMillin*, 23 Kan. App. 2d at 103-04 (citing *Place*, 462 U.S. at 707-10; *Barker*, 252 Kan. at 957). In other words, just as the United States Supreme Court noted in *Jardines*, 569 U.S. at 11, one can exist without the other.

Drawing from these precedents, the *McMillin* panel determined that a canine sniff of a vehicle's exterior in a public parking lot does not qualify as a search under the Fourth Amendment. The panel concluded that because the dog sniff did not constitute a search or a seizure, the officers were not required to show reasonable suspicion before conducting the dog sniff of McMillin's vehicle. 23 Kan. App. 2d at 105.

Churchill addresses his possessory rights in the vehicle by attempting to distinguish his case from *State v. Parker*, 309 Kan. 1, 430 P.3d 975 [2018]). In *Parker*, the defendant was detained and had parked his car in a lot, waiting for his wife to arrive and retrieve the vehicle. Since Parker neither intended to leave nor had possession of the car at the time, the court held that the use of a drug-sniffing dog did not significantly interfere with his possessory rights. 309 Kan. at 11-13. By contrast, Churchill asserts that his circumstances were notably different. He contends that while Nunnelley conducted a "free air sniff" around his vehicle—although he was not detained—he was effectively prevented from retrieving his car or leaving the scene, even if he had wanted to.

Churchill's argument is unpersuasive. Like *McMillin*, his vehicle was not seized under the legal definition required to trigger Fourth Amendment protections. A seizure occurs when there is meaningful interference with an individual's possessory interests in their property. 23 Kan. App. 2d at 105. Like *McMillin*, where the officers walked the

8

drug-detecting dog around an unoccupied vehicle parked in a public parking lot, Nunnelley walked the drug-detecting dog around the outside of Churchill's unoccupied vehicle parked on a public street. And like *McMillin*, Nunnelley did not intrude into the vehicle's interior, deprive Churchill of his possession of the vehicle, or impair its function while walking the dog around the vehicle. Even more, Churchill admits that he was not under arrest or detained. Churchill remained inside the residence while Nunnelley conducted a free-air sniff around his vehicle with the dog.

And finally, and perhaps most importantly, nothing in the record suggests that Churchill was even aware of the dog sniff, nor does Churchill claim that he knew the sniff was taking place. Churchill argues that he could not leave in his vehicle when Nunnelley deployed the drug-detecting dog and walked the dog around his vehicle for a free air sniff. But nothing in the record shows Churchill attempted to leave. See *Labbe v. State*, 556 P.3d 211, 214 (Wyo. 2024) (no seizure when vehicle parked at gas pump and there was no evidence that the occupant was trying to return to his vehicle or leave when the drug sniff took place).

In sum, after carefully reviewing the stipulated facts and the law, there is sufficient evidence to legally conclude that neither Churchill's privacy rights in his vehicle nor his possessory rights in his vehicle were violated. As such, Churchill's claim lacks support, and the State has successfully met its burden of proving the legality of the challenged free air sniff.

Affirmed.